UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANDREY PROKHOROV, IGOR GOUTSALENKO | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No: |
| | ) |
| IIK. TRANSPORT, INC., 11K TRANSPORT INC., | ) |
| IVAN KAZNIYENKO and SERGII STETSIUK | )**JURY DEMAND** |
| | ) |
| Defendants. | ) |

## CLASS ACTION COMPLAINT

Julia Bikbova
Bikbova Law Offices, P.C.
666 Dundee Road, Suite 1604
Northbrook, IL 60062
(847) 730-1800
julia@bikbovalaw.com
ARD 6291400

*Attorney for Plaintiffs*

1

Table of Contents

I.      NATURE OF THE CASE ............................................................................. 3

II.     PARTIES ................................................................................................... 4

III.    JURISDICTION AND VENUE ................................................................. 6

IV.     RELEVANT STATUTES AND REGULATIONS ..................................... 7

V.      STATEMENT OF FACTS ......................................................................... 9

VI.     CLASS ALLEGATIONS ........................................................................ 20

VII.    COUNT I: VIOLATIONS OF THE ILLINOIS WAGE PAYMENT AND
        COLLECTION ACT, 820 ILCS 115/ – AGAINST ALL DEFENDANTS .............. 23

VIII.   COUNT II: CIVIL CONSPIRACY TO COMMIT IWPCA VIOLATIONS,
        BROUGHT– AGAINST DEFENDANTS KAZNIYENKO AND STETSIUK ........ 24

IX.     JURY DEMAND ..................................................................................... 28

X.      PRAYER FOR RELIEF ........................................................................... 28

Plaintiffs, Igor Goutsalenko and Andrey Prokhorov, individually and on behalf of all other similarly situated current and former employees of IIK Transport, Inc. and 11K Transport, Inc., by their attorneys, bring their claims as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, The Illinois Wage Payment and Collection Act, ("IWPCA"), 820 ILCS § 115/1, § 115/2, § 115/3, § 115/4, § 115/9, § 115/10, § 115/13 and § 115/14 and Illinois common law against IIK Transport Inc., 11K Transport Inc., Ivan Kazniyenko, and Sergii Stetsiuk, (collectively referred to as "Defendants"), and allege, upon personal belief as to themselves and their own acts, and as for all other matters upon information and belief, and based upon the investigation made by their counsel, as follows:

## I.    NATURE OF THE CASE

1. Plaintiffs worked as truck drivers for Defendant Companies IIK Transport, Inc. (hereinafter "IIK") and 11K Transport, Inc. (hereinafter "11K"), collectively referred to as "Defendant Companies" or "Corporate Defendants". Throughout their employment, they were misclassified as independent contractors, and consistently underpaid. Defendants made deductions from Igor Goutsalenko's and Andrey Prokhorov's paychecks, which they did not consent to and were not alerted to beforehand.

2. By doing so, Defendant Companies – and the Individual Defendants who controlled them and directed their policies of misclassification of drivers and deductions – violated multiple provisions of the Illinois Wage Payment and Collections Act, 820 ILCS § 115/.

3. Similarly, Defendant Companies and Individual Defendants committed common law violations – namely, civil conspiracy to commit IWPCA violations.

4. Plaintiffs bring this action on a class basis as to all causes of action and bases for relief, on behalf of all similarly situated drivers who worked or work at Defendant Companies or any

3

related (sister, parent, subsidiary) companies. The violations experienced by Mr. Goutsalenko and Mr. Prokhorov were not discrete occurrences, but constituted a business model for IIK and 11K. The vast majority (if not all) of the truck drivers who worked or work for said companies were or are misclassified, underpaid, and subjected to illicit deductions.

## II.    PARTIES

5. Plaintiff Igor Goutsalenko is a citizen of Illinois and worked as a truck driver in Illinois, compensated on a per mile basis as a non-exempt employee for Defendant Companies in the state of Illinois, during the applicable statute of limitations period, and at all relevant times was a full time Illinois employee within the meaning of the IWPCA, 820 ILCS § 115/2.

6. Plaintiff Andrey Prokhorov is a citizen of Indiana and worked as a truck driver in Illinois, compensated on a per mile basis, as a non-exempt employee for Defendant Companies in the state of Illinois, during the applicable statute of limitations period, and at all relevant times was a full time Illinois employee within the meaning of the IWPCA, 820 ILCS § 115/2.

7. Plaintiffs bring this case on behalf of themselves and others who currently work, and who previously worked as truck drivers for Defendant Companies at any time during the relevant statute of limitations preceding the filing of the original complaint (hereinafter "Violation Period").

8. At all relevant times hereto, Defendant IIK Transport, Inc. has been an Illinois corporation engaged in transportation and delivery business in Illinois and throughout the United States. IIK Transport conducts business in Illinois, and operates facilities in Illinois. Its

principal place of business is 7500 W99th Pl, Bridgeway, IL 60455. Defendant IIK Transport has at all relevant times been an "employer" of Plaintiffs and other similarly situated truck drivers of Defendant Companies within the meaning of the IWPCA, 820 ILCS § 115/2.

9. Defendant Ivan Kazniyenko ("Defendant Kazniyenko") is a citizen of the State of Illinois, and on information and belief, is the owner, registered agent, President and executive of IIK Transport and has been its incorporator and founder from its inception through to the present day. Defendant Kazniyenko was and is IIK's key decision maker and its actual executive, who has had and exercised key decision powers with respect to payment of compensation to truck drivers working for the defendant companies, the misclassification of drivers as independent contractors, and deductions made from drivers' compensation. As such, at all relevant times Defendant Kazniyenko has been an "employer" of Plaintiffs within the meaning of the IWPCA, 820 ILCS § 115/13. Defendant Kazniyenko caused or otherwise knowingly permitted IIK Transport to violate the IWPCA.

10. At all relevant times hereto, Defendant 11K Transport, Inc. has been an Illinois corporation engaged in transportation and delivery business in Illinois and throughout the United States. Its principal place of business is 10327 Kipling Street, Westchester, IL 60154. 11K Transport conducts business in Illinois and operates facilities in Illinois. 11K Transport has at all relevant times been an "employer" of Plaintiffs and other similarly situated employees of Defendant Companies within the meaning of the IWPCA, 820 ILCS §6 115/2.

11. Defendant Sergii Stetsiuk ("Defendant Stetsiuk") is a citizen of State of Illinois, and on information and belief, is the owner, registered agent, President and executive of 11K and has been its incorporator and founder from its inception through to the present day.

Defendant Stetsiuk was and is 11K Transport's key decision maker and its actual executive, who has had and exercised key decision powers with respect to payment of compensation to truck drivers working for the defendant companies, the misclassification of drivers as independent contractors, and deductions made from drivers' compensation. As such, at all relevant times Defendant Stetsiuk has been an "employer" of Plaintiffs within the meaning of the IWPCA, 820 ILCS § 115/13. Defendant Stetsiuk caused or otherwise knowingly permitted 11K Transport to violate the IWPCA.

### III.     JURISDICTION AND VENUE

12. This court has personal jurisdiction over Plaintiffs and the class they seek to represent because the named Plaintiffs and the putative class members worked in the State of Illinois, including this judicial district, when employed by the Defendant Companies.

13. This Court has personal jurisdiction over the Corporate Defendants because the Corporate Defendants have their respective principal places of business in the State of Illinois, including this judicial district, and their conduct in the State of Illinois, including this judicial district, underlies all claims in this suit. The Individual Defendants are also citizens of Illinois and live in this judicial district.

14. At least one Plaintiff is diverse from at least one Defendant: Mr. Prokhorov is a citizen of Indiana, while all Defendants are citizens of Illinois. Mr. Igor Goutsalenko is a citizen of Illinois.

15. This Court has subject matter jurisdiction over the instant claims pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2) as this matter is a civil action in which minimal diversity exists, the Plaintiffs' claims exceed $75,000, the matter in controversy

exceeds the sum or value of $5,000,000 on class basis/in an aggregate, exclusive of interest and costs, and there are at least 500 putative class members..

16. Some members of a putative class of plaintiffs are citizens of a State different from any defendant. At least two thirds of putative class members are citizens of states other than Illinois. Notwithstanding their citizenship, all Plaintiffs and putative class members worked for Defendant Companies in Illinois.

17. Venue is proper in this District pursuant to 28 U.S.C§ 1391(b)(2) because a substantial part of the events or omissions which gave rise to IWPCA violations occurred in the Northern District of Illinois.

## IV. RELEVANT STATUTES AND REGULATIONS

18. The Illinois Wage Payment and Collection Act (820 ILCS 115/) protects Illinois workers from misclassification, underpayment of wages and compensation, unauthorized deductions, and untimely payment of earned compensation. Just as other Illinois wage laws, the IWPCA is a public interest law.

19. Under Section 2 of the IWPCA, "For all employees, other than separated employees, "wages" shall be defined as any compensation owed an employee by an employer pursuant to an employment contract or agreement between the 2 parties, whether the amount is determined on a time, task, piece, or any other basis of calculation." 820 ILCS 115/2.

20. Under Section 3 of the IWPCA, "Every employer shall be required, at least semi-monthly, to pay every employee all wages earned during the semi-monthly pay period." 820 ILCS 115/3.

21. Under Section 4 of the IWPCA, "All wages earned by any employee during a semi-monthly or bi-weekly pay period shall be paid to such employee not later than 13 days after

the end of the pay period in which such wages were earned. All wages earned by any employee during a weekly pay period shall be paid not later than 7 days after the end of the weekly pay period in which the wages were earned. All wages paid on a daily basis shall be paid insofar as possible on the same day as the wages were earned, or not later in any event than 24 hours after the day on which the wages were earned." 820 ILCS 115/4.

22. Under Section 5 of the IWPCA, "Every employer shall pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee." 820 ILCS 115/5.

23. Under Section 9 of the IWPCA, "Except as hereinafter provided, deductions by employers from wages or final compensation are prohibited unless such deductions are (1) required by law; (2) to the benefit of the employee; (3) in response to a valid wage assignment or wage deduction order; (4) made with the express written consent of the employee, given freely at the time the deduction is made; (5) made by a municipality with a population of 500,000 or more . . . or (6) made by a housing authority in a municipality with a population of 500,000 or more..." 820 ILCS 115/9.

24. Under Section 9.5 of the IWPCA, "An employer shall reimburse an employee for all necessary expenditures or losses incurred by the employee within the employee's scope of employment and directly related to services performed for the employer. As used in this Section, "necessary expenditures" means all reasonable expenditures or losses required of the employee in the discharge of employment duties and that inure to the primary benefit of the employer."

25. Under Section 10 of the IWPCA, "Employers shall notify employees, at the time of hiring, of the rate of pay and of the time and place of payment. Whenever possible, such

notification shall be in writing and shall be acknowledged by both parties. Employers shall also notify employees of any changes in the arrangements, specified above, prior to the time of change." 820 ILCS 115/10.

26. Under Section 13 of the IWPCA, "In addition to an individual who is deemed to be an employer pursuant to Section 2 of this Act, any officers of a corporation or agents of an employer who knowingly permit such employer to violate the provisions of this Act shall be deemed to be the employers of the employees of the corporation." 820 ILCS 115/13.

27. Under Section 14(a) of the IWPCA, "Any employee not timely paid wages, final compensation, or wage supplements by his or her employer as required by this Act shall be entitled to recover through a claim filed with the Department of Labor or in a civil action, but not both, the amount of any such underpayments and damages of 2% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid. In a civil action, such employee shall also recover costs and all reasonable attorney's fees. 820 ILCS 115/14.

## V. STATEMENT OF FACTS

**Plaintiff Igor Goutsalenko's employment**

28. During the time of Plaintiff Goutsalenko's employment with the Defendant Companies, he worked as a truck driver delivering goods across state lines.

29. Mr. Goutsalenko worked for IIK Transport as a truck driver for about five months, between October 15, 2013 to March 10, 2014. He was hired by IIK Transport to work for IIK and its related companies, and drove a truck with IIK branding.

30. Mr. Goutsalenko also occasionally pulled loads for 11K Transport (as of February 24, 2014) and believes he was been compensated by 11K Transport from time to time.

31. Igor Goutsalenko learned of the truck driver position at Defendant Companies through a friend.

32. On October 12, 2013, Defendant Kazniyenko conducted an in-person interview with Mr. Goutsalenko. The interview took place at IIK's office and yard in Illinois.

33. During Mr. Goutsalenko's interview, Defendant Kazniyenko told him that he would be driving a company truck that Kazniyenko companies would provide, that he could not work for any other trucking company but Kaznienko's companies, and that this would be a full-time commitment on his part. Defendant Kazniyenko said that Mr. Goutsalenko would be paid on a per-mile basis, $0.40 per mile.

34. He was also told that the terms of employment dictate that he must regularly report to IIK dispatchers to take their instructions as to which loads to haul, where, which routs to take, and that he would have to comply with the IIK's strict time constraints for deliveries and other instructions, including to be in constant communication and reporting to IIK staff and office in Illinois.

35. Defendant Kazniyenko assured Plaintiff Goutsalenko that he always paid his drivers in full and on time.

36. Mr. Goutsalenko accepted the offer. He does not recall whether he signed any contracts at hiring. If he signed any paperwork at hiring, he was not given a copy of what he may have signed.

37. Throughout the course of his employment, Plaintiff Goutsalenko was underpaid for his work because deductions were applied to his pay. He was not aware of them and has not consented to any deductions. The deductions, in total, were in excess of $4500.00.

38. For example, corporate Defendants deducted $100.00 "cash advance", $40.00 for the insurance", $17.81 "coolant", $200 "fuel", and $8.00 for "logbooks", from time to time, but from each and every single paycheck one or more deductions were applied by the Defendant companies to Mr. Goutsalenko's pay.

39. Additionally, Mr. Goutsalenko was illegally charged an "escrow" or "deposit" of $1,000.00, which Defendants deducted from his pay upon the beginning of his employment (October 2013). Defendants never repaid this sum to Plaintiff Goutsalenko.

40. Further, Mr. Goutsalenko was not paid for all the miles he has driver for Defendant Companies because the Defendant Companies did not pay him based on "odometer" miles but based on "zip code to zip code" principle utilized by Defendant Companies, which typically undercut the actual miles driven by about 10%. Mr. Goutsalenko drove approximately 13,000 miles per month. Having worked for 5 months, 10% of unpaid miles at $0.40 per mile resulted at an approximate underpayment of $2,600 for the miles he has driven.

41. In total, Plaintiff Goutsalenko was underpaid by at least $7,100.00 during his 5 months of employment with IIK and 11K.

42. Plaintiff Goutsalenko knows that all decisions regarding deductions from his pay, as well as other decisions as to his compensation were made personally by Mr. Stetsiuk and Mr. Kazniyenko.

43. Under the IWPCA, and to the date of filing this complaint, $14,421.27 in statutory interest has accrued.

**Plaintiff Andrey Prokhorov's employment**

44. During the time of Plaintiff Prokhorov's employment with the Defendants, he worked as a truck driver delivering goods across state lines.

45. Mr. Prokhorov worked for IIK Transport as a truck driver for about one year and 10 months, between August 31, 2018 to June 2020. He was hired by IIK Transport to work for IIK and 11K, drove a truck with IIK branding, and hauled loads for 11K and IIK. He was paid by 11K and IIK.

46. Andrey Prokhorov learned of this truck driver position through the internet ad.

47. On August 31, 2018, Mr. Prokhorov attended an in-person interview with Ivan Kazniyenko in Chicago, Illinois.

48. During Mr. Goutsalenko's interview, Defendant Kazniyenko told him that he would operating the truck belonging to IIK, that he could not work for any other employer by Kaznienko's companies, and that this would be a full-time commitment on his part. Defendant Kazniyenko said that he would be paid on a per-mile basis ($0.60 per mile).

49. He was also told that he must regularly report to IIK dispatchers to take their instructions as to which loads to haul, where, which routs to take, and that he would have to comply with the company's strict time constraints for deliveries and other instructions, including to be in constant communication and reporting to IIK staff.

50. Defendant Kazniyenko assured Plaintiff Prokhorov that he always paid his drivers in full all they are promised and on time. Indeed, Mr. Prokhorov had no reason to suspect that he would be misclassified, underpaid, and denied his promised compensation.

51. Mr. Prokhorov accepted the offer and does not recall whether he was required to sign any documents, and specifically, if he had to sign any contracts. If he did sign any contracts, he was not given a copy of what he may have signed.

52. The Defendants refused to pay Plaintiff Prokhorov for some work that he performed during the period of his employment. Specifically, Mr. Prokhorov's pay rate was first reduced to $0.55, instead of the promised $0.60 per mile, and it ultimately dropped down to $0.50 per mile. As a result of this change of the rate of payment, of which Plaintiff Prokhorov was not aware and to which he has not consented, Mr. Prokhorov was underpaid by at least $7,306.58.

53. In addition, Defendants paid Plaintiff Prokhorov for approximately 90% of the miles he actually drove. Defendant companies were using a "zip code to zip code" principle to calculate the miles to be paid for, as opposed to odometer miles that he actually drove. Mr. Prokhorov typically drove about 13,000 miles per month, on average. Thus, depriving Mr. Prokhorov of at least $15,000 for unpaid miles.

54. Further, Plaintiff Prokhorov was charged numerous illicit deductions from his pay. Mr. Prokhorov was never warned of these deductions, nor did he ever consent to them. In total Mr. Prokhorov was charged in excess of at least $10,000 in various dubious deductions. For example, $40 insurance, $10 ELD monitoring, as well as $13.33 Driver legal plan, $100 for a "ticket", $2,500 for an "accident".

55. Additionally, Mr. Prokhorov was illegally charged an "escrow" or "deposit" of $1,000, which Defendants deducted from his pay in August 2018. Defendants never refunded this deposit.

56. In total, Plaintiff Prokhorov was underpaid at least $25,000 during the 20 months of his employment with IIK and 11K.

57. Defendant companies failed to reimburse Mr. Prokhorov for some out-of-pocket expenses he incurred in order to perform his duties, despite requesting the management to reimburse him for his costs.

58. Plaintiff Prokhorov knew that all decisions about the deductions from his pay, and other decisions as to his compensation were made personally by Mr. Stetsiuk and Mr. Kazniyenko.

59. In the time since, $3,154.06 in statutory interest under the IWPCA has accrued.

**Defendant Companies' control over Plaintiffs' employment**

60. Defendant Ivan Kazniyenko and Defendant Sergii Stetsiuk and other personnel of Defendant Companies managed all of the Plaintiffs' and others' similarly situated drivers' work for Defendant Companies, including the number of hours worked, the distances driven, and the tasks performed by Plaintiffs and others similarly situated truck drivers.

61. Defendants Kazniyenko and Stetsiuk and other personnel of Defendant Companies exerted full control over Plaintiffs' workdays and working conditions. They dictated, controlled and ratified the wages paid, hours worked, tasks set, and all related employee compensation policies and practices for all drivers working for IIK and 11K.

62. Defendants also required the Plaintiffs and all other similarly situated truck drivers to submit to mandatory drug testing in nearby Illinois facilities in order to commence employment. These were mandatory conditions of employment, which Plaintiffs had to fulfill in order to work for Defendant Companies.

14

63. Plaintiffs and members of the putative class were required to come to Defendant companies' office in Illinois for interviews, completion of hiring process and paperwork, attend orientation as to the use of equipment and policies of the Defendant Companies, meet key personnel and take possession of equipment.

64. Defendants Kazniyenko and Stetsiuk, as well as other members of a management team at IIK and 11K, required Plaintiffs and other similarly situated drivers to use the Defendant companies' vehicles in performance of their duties, which were registered in Illinois and owned by Illinois-registered companies and displayed "IIK Transport" or "11K Transport" signs on the vehicle siding; this company branding is solely owned and managed by Defendants Kazniyenko and Stetsiuk.

65. As a result, Plaintiffs and similarly situated drivers exclusively drove and operated IIK's and 11K's vehicles and exclusively under these two companies' DOT Motor Carrier Authority. The requirement of displaying Defendant Companies' signs, branding and DOT MC numbers was equally imposed on all drivers as a condition of employment.

66. At least approximately 10% of the cargo that the Defendant Companies required the Plaintiffs and putative class members to transport was cargo deliveries to and from the Defendants' customers located in Illinois. In furtherance of their transport duties and work for the Defendant Companies, the Plaintiffs and other similarly situated truck drivers spent approximately thirty percent of their time or more commuting through the State of Illinois, regardless of whether Defendants' customers were in Illinois or not.

67. All of the instructions that the Plaintiffs and putative class members would receive came from Defendant Companies' dispatchers and management team in Illinois.

68. Defendant Companies controlled every aspect of their drivers', including Plaintiffs', work. Such control included, but was not limited to the following:

    a.   Defendant Companies required Plaintiffs and other similarly situated drivers to comply with instructions dictated by written and unwritten policies, procedures, and directives regarding Plaintiffs' and other similarly situated drivers' duties.

    b.   Plaintiffs, as well as other similarly situated drivers, were required to report to or contact dispatchers employed by the Defendant Companies in Illinois, at a pre-set time determined by Defendant Companies, at which time the Plaintiffs and other similarly situated drivers are provided with delivery assignments.

    c.   Defendant Companies' management instructed Plaintiffs and other similarly situated drivers which loads to pick up, the location of the loads/goods to be delivered, as well as the time frames for loading onto the equipment. Plaintiffs and other similarly situated drivers had and have no discretion with respect to which loads they would pick up or deliver or when. Additionally, the Defendant Companies dictated and dictate the time by which the delivery must be made.

    d.   Defendant Companies employed and employ managers who had supervisory responsibility over Plaintiffs and other similarly situated drivers, and who could and did assign and direct their work.

    e.   Plaintiffs and other similarly situated drivers were required to purchase and carry GPS devices, which allowed the Defendant Companies' personnel to track the drivers throughout the day or night. Defendant Companies' dispatchers and supervisors also communicated with the Plaintiffs and similarly situated drivers

while they were driving via telephone in order to convey instructions and otherwise oversee the drivers.

f.  Defendant Companies required Plaintiffs and other similarly situated drivers to undergo background checks and drug testing.

g.  Defendant Companies utilized a variety of insurance from an insurer of their choice, such as non-trucking liability insurance, occupational accident insurance, property damage and cargo insurance. While the drivers, including Plaintiffs, had no say in which insurance policies were chosen, they also had all of the related expenses deducted from their pay.

h.  If the Plaintiffs or other similarly situated drivers wished to take time off, the Defendant Companies required them to give timely advance notice, with the Plaintiffs and other similarly situated drivers disciplined or terminated for failure to provide such notice.

i.  Defendant Companies' personnel advised Plaintiffs and other similarly situated drivers that their refusal to drive a load that had been assigned to them would result in an immediate termination of their employment.

69. As part of their strict control over Plaintiffs' work, Individual Defendants required that the Plaintiffs and putative class members submit all bills of lading, logbooks, and other required paperwork to the Defendant Companies' head office in Illinois.

70. At no time during their employment were Plaintiffs and other similarly situated drivers allowed to have their own customers nor did they ever have their own customers. Further, they could not choose and did not choose their own routes for delivery of cargo, could not and did not receive compensation or otherwise exchanged payment for their delivery other

than being compensated by the Defendant Companies, and could not and did not negotiate any matters or bargains with any customers or brokers.

71. Plaintiffs and other similarly situated truck drivers shared similar job titles, followed the same policies and practices, performed similar duties, and as a result of Defendant Companies' common scheme of misclassification and applications of unlawful deductions, were similarly subject to exploitation and denied the promised and earned compensation.

**Liability of individual defendants Kazniyenko and Stetsiuk**

72. Defendants Kazniyenko and Stetsiuk had knowledge of the mutual assent between the Plaintiffs and Defendant Companies to compensate the Plaintiffs for all of their work because it was Defendant Kazniyenko, after the discussions and agreement with Defendant Stetsiuk, who interviewed each Plaintiff, offered employment to each Plaintiffs, and promised to compensate them in full and on time based on a certain rate ($0.40 per mile to Mr. Goutsalenko and $0.60 – to Mr. Prokhorov). In short, it was Kazniyenko who entered into an oral agreement with each Plaintiff, on behalf of IIK and 11K, for employment as interstate truck drivers.

73. Defendants Kazniyenko and Stetsiuk similarly had knowledge of mutual assent between Defendant Companies and other drivers that came to work for the Defendant Companies and were interviewed by Kazniyenko, or Stetsiuk or Defendant Companies' personnel responsible for hiring.

74. Individual Defendants further had knowledge of Defendant Companies' systematically misclassifying their drivers as independent contractors because Kazniyenko and Stetsiuk were the ones to mastermind the misclassification scheme and the implemented it.

75. Defendants Kazniyenko and Stetsiuk knowingly permitted or otherwise caused Defendant Companies to wrongfully deny the payment of compensation to Plaintiffs and putative class members by actively and affirmatively directing the Defendant Companies' personnel to deny the earned and promised compensation, apply unlawful deductions to drivers' pay and deny the drivers' request to pay the final compensation and compensation for the last loads that the drivers would haul prior to termination of their employment.

76. Both individual Defendants established policies for Defendant Companies which violated the IWPCA: (1) at the beginning of running their transportation services enterprise, on or about March 2012, when IIK was founded, Kazniyenko and Stetsiuk devised a scheme to misclassify the truck drivers as Independent Contractors and consequently, (2) underpay the truck drivers their earned compensation by applying deductions to the compensation of drivers; and (4) forced drivers and other personnel to doctor or otherwise falsify logs

77. Defendants Kazniyenko and Stetsiuk implemented their exploitative scheme in full knowledge that most of the truck drivers they hired would take the job offered, not complain about underpayment of wages, and not seek any recourse in court or otherwise with government authorities. Kazniyenko and Stetsiuk targeted drivers who were and are immigrants, with limited English language skills and lack of ability to learn and understand the wage and hour laws in Illinois and the United States in general, so as to ensure a consistent power imbalance, which the individual Defendants used to their advantage and profit.

78. Instead of running an honest business, Defendants Kazniyenko and Stetsiuk designed the above-described scheme of deductions and wage withholdings to take money from hard-working, vulnerable employees who could not or would not fight back.

79. Defendant Companies' practices, as set up and implemented by Individual Defendants, violated multiple provisions of the Illinois Wage Payment and Collection Act. In addition – but not a subject matter of the instant Complaint – Individual Defendants set up their enterprises as massive schemes to violate nearly a dozen of other state and federal laws, such as U.S. Department of Transportation regulations limiting the time the drivers can operate their trucks on the road and proscribing minimum required rest time, Illinois laws on worker's compensation insurance, federal and state laws concerning payroll taxes, state laws requirement unemployment insurance contributions, Affordable Care Act, Immigration and Naturalization Act, and more.

80. As a result of Defendant Companies' unlawful practices, as set up and implemented by Individual Defendants, the Defendant Companies and Individual Defendants, as the sole shareholders of respectively owned Defendant companies, IIK and 11K, profited immensely. They benefited from reduced labor and payroll costs by making illegal deductions and otherwise withholding pay from Plaintiffs and similarly situated drivers.

81. As a result of Individual Defendants' improper and willful actions causing the Corporate Defendants to fail to pay Plaintiffs and others similarly situated I accordance with the requirements of the IWPCA, Plaintiffs and others similarly situated putative class members suffered lost wages and other actual damages.

## VI. CLASS ALLEGATIONS

82. Plaintiffs bring these claims for relief on their own and as a class action pursuant to Fed R. Civ. P. 23. The class is defined as:

> *"All persons who have worked for Defendant Companies as truck drivers and truck*
>
> *driver trainees in Illinois or otherwise have driven Defendant Companies', their*

20

*predecessors', successors', subsidiaries' and/or affiliated companies' trucks at any time during the relevant statutory period, and who entered into an Independent Contractor agreement individually or on behalf of another entity, oral or written, and personally provided freight cargo transportation services pursuant to that Agreement for Defendant Companies and who have not been classified as employees of Defendant Companies".* (Count I).

*"All persons who have worked for Defendant Companies as truck drivers and truck driver trainees in Illinois or otherwise have driven Defendant Companies', their predecessors', successors', subsidiaries' and/or affiliated companies' trucks at any time during the relevant statutory period, and personally provided freight cargo transportation services, against whom the Individual Defendants, on behalf of themselves and their respective Corporate Defendants, committed Civil Conspiracy to violate IWPCA."* (Count II).

83. This action is properly maintainable as a class action under Rules 23(a) and 23(b) because:

  a. The class or subclasses of plaintiffs, estimated 500 drivers, is so numerous that joinder of all members is impracticable

  b. There are common questions of law and fact as to whether Defendant Companies improperly misclassified the drivers as independent contractors in violation of Section 2 of IWPCA, as the drivers were and are in fact covered by the IWPCA; whether the drivers are entitled to recover the amounts deducted by the Company from their wages in violation of Section 9 of IWPCA, as well as any unpaid but earned compensation; whether Defendants did not reimburse the drivers for work-related expenses in accordance with Section 9.5 of IWPCA; whether the proposed

class members are entitled to statutory interest and attorney's fees and costs under Section 14 of IWPCA, and whether Individual Defendants are liable under IWPCA (Count I) as well as for the common law conspiracy to commit IWPCA violations (Count II).

c. All claims arise from the same practice or course of conduct of the Corporate and Individual Defendants and are based on the same theory, and therefore the claims are typical.

d. Each driver has the same potential claim and types of damages, and these common questions of law and fact predominate over any possible questions affecting only individual members. As determination of liability under IWPCA for misclassification, failure to pay for all work done, and unlawful deductions does not require individualized and fact intensive inquiry; and thus, the proposed class is sufficiently cohesive to warrant adjudication by representation.

e. The named Plaintiffs and their attorney will adequately protect the interests of the entire class.

f. Class treatment in this particular case is the only appropriate means for the fair and efficient adjudication of the controversy because of the length of the dispute, the intimidation and retaliation threats and actions by Individual Defendants, the amount of individual damages and the prohibitive costs of individual suits. Further, the putative class members' interests in individually controlling the prosecution of separate actions is minimal, the potential individual recoveries in this case are small enough to warrant class action treatment and this forum is the only appropriate forum for such an action because one named Plaintiff, as well as some other drivers-

22

members of the putative class, reside in this District and the unlawful practices alleged by Plaintiffs occurred within Illinois and which affected the rights of all members of the putative class who worked for the Defendant Companies during the statutory period of time.

### VII. COUNT I: VIOLATIONS OF THE ILLINOIS WAGE PAYMENT AND COLLECTION ACT, 820 ILCS 115/ – AGAINST ALL DEFENDANTS

84. Plaintiffs re-allege and incorporate paragraphs 1 through 83 above as and for paragraph 84 of this Count I.

85. Each corporate Defendant is an "employer" within the meaning of Section 115/2 of IWPCA. Each individual Defendant is an "employer" within the meaning of Section 115/2 of the IWPCA.

86. Defendants violated Section 115/2 of the IWPCA by misclassifying Plaintiffs and those similarly situated.

87. Defendants violated Section 115/3 and Section 115/4 of the IWPCA by failing to pay Plaintiffs and those similarly situated their wages in a timely manner.

88. Defendants violated Section 115/5 of the IWPCA by failing to pay Plaintiffs their final compensation in full and in a timely manner.

89. Defendants violated Section 115/9 of the IWPCA by making unauthorized deductions from the paychecks of Plaintiffs and those similarly situated. These deductions were not required by law, did not benefit Plaintiffs, were not made in response to a valid wage assignment order, and were not made with the express written consent of employees.

90. Defendants violated Section 115/9.5 of the IWPCA for failing to reimburse Mr. Prokhorov and other employees-drivers who worked for corporate Defendants since January 1, 2019 for all necessary expenditures or losses incurred by the employees-drivers within the

corporate Defendants' scope of employment and directly related to services performed for the Defendant Companies beginning with January 1, 2019.

91. Defendants violated Section 115/10 of the IWPCA by failing to notify Plaintiffs and those similarly situated of their true rate of pay in writing or orally at any point of hiring and employment.

92. The total amount Mr. Goutsalenko's damages for the five months of his employment with Defendant Companies is approximately $7,100.00 without interest accrued, and $21,521.27 with interest accrued to date but excluding attorney's fees and costs.

93. The total amount of Plaintiff Prokhorov's damages for the twenty months of his employment with Defendant Companies is approximately $25,000.00, and in the time since these deductions were taken, $28,154.06 in statutory interest under the IWPCA has accrued.

94. Individual Defendants Kazniyenko and Stetsiuk are personally liable for the corporate Defendants' violations of the IWPCA, pursuant to Section 115/13 of the IWPCA because they intentionally or otherwise knowingly permitted Corporate Defendants to violate IWPCA.95. Pursuant to Section 115/14 of the IWPCA, all four Defendants are liable to Plaintiffs and members of the putative class for all interest accrued, and for all attorney's fees and costs incurred and to be incurred as a result of prosecution of the instant Complaint.

## VIII.    COUNT II: CIVIL CONSPIRACY TO COMMIT IWPCA VIOLATIONS, BROUGHT– AGAINST DEFENDANTS KAZNIYENKO AND STETSIUK

95. Plaintiff re-alleges and incorporates paragraphs 1 through 94 above as and for paragraph 95 of this Count II.

24

96. At the time when Defendants Kazniyenko and Stetsiuk incorporated and set up IIK Transport in 2012, these two individual Defendants entered into an agreement with each other to set up a scheme to hire truck drivers to operate the equipment that Kazniyenko and Stetsiuk would buy via their corporate entities, misclassify them as independent contractors as opposed to employees as to avoid responsibilities owed to the employees under federal and state laws, including the IWPCA, and to further be held unaccountable for taking unlawful deductions, chargebacks of expenses, fines and penalties from their drivers.

97. Individual Defendants knew that they would mislead the drivers who would apply for jobs at IIK and 11K, and knowingly agreed to implement their scheme to misclassify and underpay their drivers who would come to work for the Defendant Companies.

98. Individual Defendants knew all laws that they were intending to violate as the U.S. Department of Transportation, before issuing to a trucking company the Motor Carrier Authority publishes, to all prospective applicants, series of legal notices and publications on the laws which trucking companies must comply with. They also knew that as executives of a corporation, they and their enterprise must comply with the wage laws, as the Secretary of State of Illinois notifies business owners at time of incorporation and/or registration of business entities, via website and print handouts, of the requirements under the wage laws, worker's compensation, unemployment commission regulations, and other laws and regulations businesses such as IIK and 11K must comply with.

99. Individual Defendants knew that to implement and further their scheme to skim their employees' wages, violate the IWPCA and other state and federal laws, they would need to be in an agreement and act in concert. This agreement that they entered circa 2012, included the implementation of misclassification and underpayment schemes.

25

100. Once the Individual Defendants began operating IIK, they implemented their scheme to misclassify the truck drivers as independent contractors, withhold the compensation from truck drivers by taking dubious deductions from drivers' pay, and deny payment of compensation in a timely manner.

101. In furtherance of their conspiracy, Individual Defendants acted in concert to ensure that all their subordinates at IIK, and then at the respectively owned Defendant companies, such as managers, HR, safety department, dispatchers and other employees, complied with Individual Defendants' instructions part of the implementation of their scheme to misclassify drivers and skim the drivers' wages.

102. Individual Defendants committed overt acts in furtherance of the common scheme by enabling the Defendant Companies to advertise job positions, interviewing the named Plaintiffs and others similarly situated, hiring them but then misclassifying them as independent contractors, by not paying them the wages they earned and were promised at hiring that they would earn

103. Individual Defendants knew about job application by each named Plaintiff, conspired to misclassify each named Plaintiff and then underpay the compensation that each named Plaintiff would earn, and directed their subordinate personnel to apply dubious deductions to the named Plaintiffs' pay in violation of IWPCA.

104. By their actions, as a result of their conspiracy to violate IWPCA, Individual Defendants caused and continue to cause injury to the named Plaintiffs and others similarly situated as the promised and earned compensation remains unpaid.

26

105. Each Individual Defendant, being the sole owner/shareholder of respective corporate Defendant, acted in their own interests and for their own benefit when entering into conspiracy to violate IWPCA and when taking steps in furtherance of said conspiracy.

106. Individual Defendants committed civil conspiracy against Plaintiffs and putative class members. Namely, to violate Illinois Wage Payment and Collection Act.

107. That in addition to the amount of wages and/or final compensation the Individual Defendants owe Plaintiffs and other similarly situated drivers as a result of their conspiracy to violate IWPCA, and attorneys' fees and costs incurred as a result of this action, Plaintiffs and others similarly situated drivers are also entitled to punitive damages because:

   a. Individual Defendants knowingly and willfully committed conspiracy to violate Plaintiffs' and other similarly situated drivers' rights under the IWPCA.

   b. The commission of civil conspiracy in Illinois is an intentional tort, and also is a violation of Illinois Wage Payment and Collection Act, the law that concerns the public interest and not just the individual interest, e.g. the law aimed to protect all employees in the State of Illinois, whereby the knowingly and willingly committed violation of that Act may also be punishable in criminal court pursuant to 820 ILCS 115/14; and

   c. Individual Defendants' civil conspiracy was and is a deliberate attempt to lure Plaintiffs and other similarly situated drivers into working for Defendant Companies without due compensation for their service, as well as annoy, harass, oppress, and intimate Plaintiffs and others similarly situated - who do not have the financial and legal resources that the Defendants have at their disposal - into abandoning a legal right which Plaintiffs and others similarly situated properly

asserted (i.e. to be paid the compensation by their employer which, by all accounts, they have earned and which is due and owing pursuant to the Illinois Wage Payment and Collection Act).

## IX.    JURY DEMAND

PLAINTIFFS REQUEST A TRIAL BY JURY ON ALL CLAIMS.

## X.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Honorable Court:

a.    Certifies the class and appoint Plaintiffs and Plaintiffs' counsel to represent the class;

b.    Finds that the Corporate Defendants violated the Illinois Wage Payment and Collection Act by misclassifying Plaintiffs and other drivers-members of the class in violation of 820 ILCS § 115/2 and further violated Sections § 115/3, § 115/4, § 115/5, § 115/9, § 115/9.5, and § 115/10 of IWPCA;

c.    Holds Corporate Defendants liable for all damages caused to Named Plaintiffs and members of the class in an amount in excess of $5,500,000.00;

d.    Imposes penalties and interest pursuant to Section 14 of IWPCA;

e.    Awards all attorney's fees and costs in this litigation to Plaintiffs pursuant to Section 14 of IWPCA;

f.    Finds that Individual Defendants Kazniyenko and Stetsiuk are personally jointly and severally liable for the Corporate Defendants' violations of IWPCA under Section 13 of IWPCA;

g.    Finds that Individual Defendants Kazniyenko and Stetsiuk entered into a conspiracy to commit violations of the IWPCA, for their own personal benefit and for the benefit of respectfully managed principal Corporate Defendants;

h.   Holds Individual Defendants Kazniyenko and Stetsiuk liable for damages caused by this conspiracy on Plaintiffs' and members of the class in excess of $5,500,000.

i.   Requires that the Individual Defendants pay punitive damages as may be decided by the trier of fact, for their willful and wanton conduct as alleged herein Count II for civil conspiracy;

j.   Grants such other relief as this Court deems appropriate.

Respectfully submitted,

By: _*Julia Bikbova*_____
Julia Bikbova, Plaintiffs' Attorney

Julia Bikbova
Bikbova Law Offices, P.C.
666 Dundee Road, Suite 1604
Northbrook, IL 60062
(847) 730-1800
julia@bikbovalaw.com
ARD 6291400

Dated: November 17, 2020