**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ANDREY PROKHOROV, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:20-cv-06807 |
| v. | ) | |
| | ) | Judge Manish S. Shah |
| IIK TRANSPORT, INC., 11K TRANSPORT, | ) | Magistrate Judge M. David Weisman |
| INC., IVAN KAZNIYENKO, and SERGII | ) | |
| STETSIUK, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION PURSUANT TO FED. R. CIV. P. 23**

Stephen C. Voris (svoris@burkelaw.com)
Andrew LeMar (alemar@burkelaw.com)
Burke, Warren, MacKay & Serritella, P.C.
330 North Wabash Avenue, 21st Floor
Chicago, Illinois 60611-3607
Telephone:  (312) 840-7000
Facsimile:  (312) 840-7900

*Attorneys for Defendants IIK Transport, Inc., 11K
Transport, Inc., Ivan Kazniyenko, and Sergii Stetsiuk*

In his Motion for Class Certification and Memorandum (Dkt. Nos. 71-72), Plaintiff ignores key evidence and testimony showing why class certification should be denied. He cannot show commonality or predominance because whether IIK Transport, Inc. is liable to each putative class member under Sections 9 and 9.5 of the Illinois Wage Payment and Collection Act ("IWPCA") requires individual inquiries to determine whether (1) the IWPCA applies to each driver and (2) if so, whether IIK violated Sections 9 and 9.5 as to each driver. Further, he cannot satisfy the typicality, adequacy or representation, or superiority requirements, and his proposed class is overly broad.

## FACTS

Plaintiff alleges IIK, 11K Transport, Inc., Ivan Kazniyenko, and Sergii Stetsiuk violated the IWPCA by making unauthorized deductions from Plaintiff and putative class members' pay and failing to reimburse work-related expenses. (Dkt. No. 17 ¶¶ 45-53.) IIK and 11K, respectively owned by Kazniyenko and Stetsiuk, are trucking companies that haul freight nationwide and in Canada. (Kazniyenko Dep. at 6:4-5, 100:24-101:5 (Ex. C to Mem.); Stetsiuk Dep. at 6:16-18, 69:8-14 (Ex. 1).) IIK and 11K share office space in Bridgeview, Illinois, but are separate companies with separate ownership, equipment, and drivers. (Ex. D to Mem. at No. 19; Ex. C to Mem. at 22:7-23:16, 102:11-104:23; Ex. 1 at 11:13-12:7, 38:11-40:2, 67:1-69:7.) Nearly all IIK's drivers are long-haul drivers who enter into Independent Driver Agreements ("IDAs") with IIK on behalf of corporate entities they own. (Ex. C to Mem. at 13:19-14:1; Kazniyenko Decl. ¶ 7 (Ex. 2).) Under IDAs, IIK can make certain deductions from drivers' pay, some of which are identified in the IDA by dollar amount, while those with varying amounts are not. (*Id*. ¶¶ 8-11.) Drivers have the option of entering into an agreement with Drivers Legal Plan ("DLP"), a third-party group legal plan, under which drivers agree to a deduction of $2.98 per week. (*Id*. ¶ 14.) Under the DLP, drivers can use a nationwide network of lawyers for traffic violations, in which case DLP charges IIK a lawyer deductible fee, which IIK then deducts from the driver's pay. (*Id*.) Drivers also have the option of enrolling in occupational accident insurance ("OAI") with an insurer, and if they do, they sign an enrollment form

1

agreeing IIK will deduct the OAI premiums from the driver's pay. (*Id.* ¶ 15.) IIK communicates with its drivers both orally and in writing, including regarding deductions and consent for deductions. (*Id.* ¶ 19.)

IIK provides most drivers with a truck and trailer, but 40 of the 268 drivers in the putative class (since December 2018) are owner-operators who own their own trucks and/or trailers, have different types of deductions taken from their pay than non-owner-operators, and are provided written invoices regarding deductions. (Ex. C to Mem. at 27:4-11, 95:9-99:10; Ex. 3 at "Drivers" tab; Ex. 2 ¶ 17.)[1] Nearly all IIK's drivers do not live in Illinois, the vast majority of miles driven by IIK's drivers are outside Illinois, not all routes start or end in Illinois, and drivers are often on the road for several weeks without coming to Illinois. (Ex. 2 ¶¶ 36-38; Ex. C to Mem. at 18:15-19:12, 19:15-20:10, 20:24-21:6, 101:6-8; Ex. 3 at "Drivers" tab.) In December 2018, a fire destroyed IIK's building, including nearly all IIK's records and servers. (Ex. 2 ¶ 40.) Thus, IIK cannot determine the identities of drivers whose relationship with IIK ended prior to December 2018 or the types or amounts of deductions IIK made from such drivers' pay. (*Id.*)

From 2013 to 2014, Plaintiff was a driver for IIK, but any deductions IIK made during that time are not part of his lawsuit. (Prokhorov Dep. at 27:15-28:2 (Ex. 4 hereto).) In 2018, Plaintiff, on behalf of a company he owned, entered an IDA with IIK. (Ex. 2 ¶¶ 20-21; Ex. G to Mem.) Only 8.1% of the miles he drove for IIK were in Illinois, his routes did not necessarily begin or end in Illinois, and he has never been a resident of Illinois. (Ex. 2 ¶ 22; Ex. 4 at 13:5-17, 79:21-80:12, 146:14-18.) He denied he signed application documents with IIK, was not sure if he signed the IDA, did not read the IDA, believed no deductions would be taken from his pay, and stated the IDA is fraudulent. (*Id.* at 34:4-19, 54:18-56:23, 59:14-24, 61:18-25, 62:10-23.) He suggested his signatures on the DLP agreement and OAI enrollment form may have been forged, and he testified he did not authorize or understand that IIK would make

---

[1] Exhibits F and L to the Memorandum are excerpts from an outdated version of document Bates labeled IIK 168, which is the driver deduction and compensation data IIK produced. (*See* Ex. D to Mem. at Nos. 2-3.) An updated version of IIK 168 was subsequently produced, and IIK is providing the Court with the native Excel file of the updated version of IIK 168, rather than a PDF version, which would be thousands of pages.

deductions for OAI premiums or $2.98 per week under the DLP agreement. (*Id*. at 66:1-22, 69:14-70:25, 75:8-76:2, 94:7-12.) He terminated his relationship with IIK in June 2020, without providing two weeks' notice. (Ex. C to Mem. at 105:12-108:19.) Plaintiff never drove for 11K, and 11K did not have any agreements with him, pay him, or deduct any amounts from his pay. (Ex. 1 at 44:6-11, 65:2-66:24.)

## ARGUMENT[2]

### I.     PLAINTIFF CANNOT SHOW COMMONALITY OR PREDOMINANCE.

"To establish commonality, members of the class must have suffered the same injury, which does not mean merely that they have all suffered a violation of the same provision of law, but rather that the class members' claims depend upon a common contention that is capable of classwide resolution." *Schneider v. Ecolab, Inc.*, No. 14 C 01044, 2016 U.S. Dist. LEXIS 191569, at *11 (N.D. Ill. Sep. 2, 2016) (citation and quotation marks omitted). "[I]f resolving the common legal issue depends on factual determinations that would require individualized inquiry for each class member, commonality is not met." *Id*. at *11-12 (citation and quotation marks omitted). Rule 23(b)(3)'s "predominance criterion is far more demanding. . . . The Court thus must compare the role of common issues of law and fact with the role of individual issues, including whether it would be necessary to examine individual transactions in adjudicating whether there is liability on individual claims." *Dailey*, 2014 U.S. Dist. LEXIS 119190, at *7 (citations and quotation marks omitted). "[C]ommon questions [must] represent a significant aspect of [a] case such that they can be resolved for all members of [a] class in a single adjudication." *Schneider*, 2016 U.S. Dist. LEXIS 191569, at *26 (citation and quotation marks omitted). The predominance analysis is

---

[2] "A class may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites for class certification have been met." *Santiago v. City of Chi.*, 19 F.4th 1010, 1016 (7th Cir. 2021) (citation and quotation marks omitted). "To be entitled to class certification, a plaintiff must satisfy each requirement of [Fed. R. Civ. P.] 23(a) – numerosity, commonality, typicality, and adequacy of representation – as well as at least one of the subsections of Rule 23(b)." *Dailey v. Groupon, Inc.*, No. 11 C 05685, 2014 U.S. Dist. LEXIS 119190, at *5 (N.D. Ill. Aug. 27, 2014) (citation omitted). "[A] district court must make whatever factual and legal inquiries are necessary to ensure that requirements for class certification are satisfied before deciding whether a class should be certified, even if those considerations overlap the merits of the case." *Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 815 (7th Cir. 2010). IIK does not dispute numerosity or the adequacy of Plaintiff's counsel in this Opposition.

two steps. "First, the court focuses on the substantive elements of plaintiffs' cause of action and inquire[s] into the proof necessary for the various elements," as well as "the proof necessary to adjudicate defenses to the claim." *Gordon v. Caribbean Cruise Line, Inc.*, No. 14 C 5848, 2019 U.S. Dist. LEXIS 20604, at *26-27 (N.D. Ill. Feb. 8, 2019) (citation and quotation marks omitted). Second, the Court "must inquire into the form that trial on these issues would take . . . .[,] examin[ing] the procedural devices and alternatives available in trying class actions." *Id.* at *27 (citations and quotation marks omitted).

### A. Whether the IWPCA Applies to a Driver Will Require an Individual Analysis.

Plaintiff focuses his commonality argument and predominance argument on the "ABC test" to determine whether a worker is an "employee" under Section 2 of the IWPCA. (Mem. at 8-10, 13.) Section 2 "casts upon the hiring party the burden to establish three requisite facts to rebut the presumption [of employment]." *In re FedEx Ground Package Sys., Emp. Practices Litig.*, 273 F.R.D. 424, 489 (N.D. Ind. 2008) ("*FedEx*") (citation omitted). While IIK disagrees the "ABC test" can be adjudicated on class-wide basis – because whether a driver is considered an "employee" under Section 2 is a fact-based inquiry,[3] and IIK bears the burden of rebutting Section 2's presumption – a more important threshold issue thwarts commonality and predominance: common evidence cannot show whether the IWPCA applies to the vast majority of the putative class, who are not Illinois residents. The IWPCA does not have "extraterritorial reach. Its evident purpose is to protect employees *in Illinois* from being stiffed by their employers." *Glass v. Kemper Corp.*, 133 F.3d 999, 1000 (7th Cir. 1998). It "does not apply simply because an employee has performed *any* work in Illinois for an Illinois employer." *Cohan v. Medline Indus., Inc.*, 170 F. Supp. 3d 1162, 1174-75 (N.D. Ill. 2016) *aff'd* 843 F.3d 660 (7th Cir. 2016) (citation and quotation marks omitted).

---

[3] *See Bell v. Bimbo Foods Bakeries Distrib.*, No. 11 C 03343, 2013 U.S. Dist. LEXIS 170063, at *40 (N.D. Ill. Dec. 3, 2013) ("[T]he IWCPA's independent-contractor exemption requires an individualized analysis of three separate elements that go beyond the scope of the agreement itself."); *FedEx*, 273 F.R.D. at 489 (denying certification of an IWPCA claim brought by FedEx's drivers because "Illinois law poses questions upon which FedEx Ground must be allowed to present driver-by-driver evidence."); Ill. Dep't of Labor, "Wage Payment and Collection Act FAQ" *available at* https://www2.illinois.gov/idol/FAQs/Pages/wage-payment-faq.aspx (accessed Aug. 31, 2022) ("A determination of whether an individual is an employee or an independent contractor requires a fact based inquiry.").

Instead, the employee must have performed "sufficient" work in Illinois for the IWPCA to apply. *Id.* at 1175 (nonresident employees had not performed enough work in Illinois for the IWPCA to apply where they "were only actually present in Illinois for, at most, a few days every year").[4]

Contrary to Plaintiff's suggestion, *Watts v. ADDO Mgmt., L.L.C.*, 97 N.E.3d 75 (Ill. App. 2018), does not show "the IWPCA applies to **all** work performed by **all** class members." (*See* Mem. at 13.) *Watts* is distinguishable because the court emphasized that plaintiffs' IWPCA claims could survive dismissal because they were Illinois residents, repeatedly noting the IWPCA applies to "Illinois employees." *Watts*, 97 N.E.3d at 77, 84 (distinguishing *Glass* and *Cohan* because "[n]either of those cases involved an Illinois employee . . . . By contrast, in the present case, it is undisputed that the plaintiffs were Illinois residents and that the work they performed originated and ended in Illinois."); *see also id.* at 82 (The IWPCA's "applicability does not involve the consideration of the percentage of work performed *by Illinois employees* inside Illinois.") (emp. added). Regardless, Plaintiff cannot rely on *Watts*, an Illinois appellate court decision, as this Court is bound by the Seventh Circuit's decision in *Glass*. *E.g.*, *Cilliers v. Cobalt Holdings, Inc.*, No. 18 C 2428, 2019 U.S. Dist. LEXIS 59937, at *8 (N.D. Ill. Apr. 8, 2019) (rejecting reliance on *Watts*, holding that courts in this District are required to follow *Glass*, and dismissing IWPCA claim where plaintiffs did not allege they were residents of Illinois or performed work in Illinois). In this respect, the *Tsybikov* case cited by Plaintiff (Mem. at 13-14) wrongly relied on *Watts* and should be ignored.

Plaintiff has never been an Illinois resident. (Ex. 4 at 13:5-17, 146:14-18.) Only 8% of the miles he drove for IIK were in Illinois. (Ex. 2 ¶ 22.) Over 82% of IIK's drivers lived in states other than Illinois, IIK makes deliveries and pick-ups throughout the U.S. and Canada, IIK's drivers are often on the road for

---

[4] *See also Kalechstein v. Abbassian*, No. 15 C 5929, 2017 U.S. Dist. LEXIS 124911, *15-16 (N.D. Ill. Aug. 8, 2017) (nonresident who worked 2% of time in Illinois over three years did not perform enough work in Illinois for IWPCA to apply); *Hirst v. SkyWest, Inc.*, No. 15 C 02036, 2016 U.S. Dist. LEXIS 67806, at *29 n.12 (N.D. Ill. May 24, 2016) ("The Illinois Department of Labor has . . . construed the IWPC[A] to apply only to work performed within Illinois."); *Vendetti v. Compass Envtl., Inc.*, No. 06 CV 3556, 2006 U.S. Dist. LEXIS 90404, at *4-7 (N.D. Ill. Dec. 14, 2006) (dismissing IWPCA claim by nonresident employee who alleged he performed "some work" in Illinois).

several weeks without returning to Illinois, not all routes originate or end in Illinois, and drivers are not required to return their trucks and trailers to Illinois between loads. (*Id*. ¶¶ 36-38; Ex. C to Mem. at 18:15-19:12; Ex. 3 at "Drivers" tab (showing states that issued putative class members' CDLs).) The vast majority of miles driven by IIK's drivers are outside Illinois, but the only way to determine how many miles each driver drove in Illinois would be to manually review pay statements and other driving related documents for each driver. (Ex. C to Mem. at 101:9-17; Ex. 2 ¶¶ 23, 36.)[5] Thus, Plaintiff cannot demonstrate commonality and predominance as to the applicability of the IWPCA to each putative class member.

> **B.**      **An Individual Inquiry is Required to Determine Whether IIK Violated Either of the Sections of the IWPCA at Issue in Plaintiff's Complaint.**

Even if the Court determines the IWPCA applies to Plaintiff or other drivers, the Court still must determine whether IIK violated Sections 9 and 9.5 of the IWPCA. *See Enger v. Chi. Carriage Cab Co.*, 77 F. Supp. 3d 712, 715 n.3 (N.D. Ill. 2014) ("[T]he IWPCA does not provide a cause of action for damages based on the mere mischaracterization of an employee as an independent contractor."). An individual inquiry would be required to determine whether IIK violated both sections as to each IIK driver.

**Section 9**. Under Section 9, "deductions by employers from wages or final compensation are prohibited unless such deductions are . . . (2) to the benefit of the employee; . . . [or] (4) made with the express written consent of the employee, given freely at the time the deduction is made . . . .," 820 ILCS 115/9, and it is the employer's burden to "establish[] the applicability of any claimed exception to Section 9 of the Act." 56 Ill. Admin. Code § 300.710. The IWPCA allows for future deductions when there is a written agreement authorizing such deductions. *Osorio v. Tile Shop, LLC*, No. 15 C 15, 2016 U.S. Dist.

---

[5] Plaintiff also argues the IWPCA applies because of an Illinois choice-of-law provision in the IDA (*see* Mem. at 13-14), but courts – including this Court – have rejected this exact argument. *Cohan v. Medline Indus.*, No. 14 CV 1835, 2014 U.S. Dist. LEXIS 119356, at *10 n. 3 (N.D. Ill. Aug. 27, 2014) (Shah, J.) ("I do not adopt Cohan's argument that the Illinois choice-of-law and choice-of-forum provision in the parties' contract entitles Cohan to the protections of the IWPCA. Cohan's argument is unpersuasive: *standard choice-of-law and choice-of-forum contract provisions do not extend the reach of state statutes.*") (emp. added) (citation omitted); *Vendetti*, 2006 U.S. Dist. LEXIS 77609, at *6-7 (rejecting same argument).

LEXIS 9647, at *5 (N.D. Ill. Jan. 28, 2016) ("[The IWPCA's regulations] cannot mean that where an employee signs an agreement to permit regular deductions . . . where necessary to reimburse his employer for subsidies, he still must authorize every deduction from every paycheck on a paycheck-by-paycheck basis.") (citation omitted); *Bell*, 2013 U.S. Dist. LEXIS 170063, at *16-17 (IWPCA claim failed where based on deductions for costs authorized in signed agreement); *Kim v. Citigroup, Inc.*, 856 N.E.2d 639, 641-42, 646 (Ill. App. 2006) (deductions made in 2000 permitted under the IWPCA based on agreement plaintiff signed in 1997). An agreement disclosing a deduction is sufficient to create an issue of fact as to whether the deduction was authorized even if the specific amount of a deduction is not disclosed. *Yata v. BDJ Trucking Co.*, No. 17-cv-03503, 2021 U.S. Dist. LEXIS 83841, at *15, *17 (N.D. Ill. May 3, 2021) (denying plaintiff truck driver's motion for summary judgment on IWCPA claim regarding OAI deductions where agreement disclosed deduction without identifying exact amount and regarding other deductions disclosed in employment-related agreements). As to whether a deduction is "to the benefit of the employee," "[i]t is not the *expense* that must be for his benefit, but the *deduction* itself." *Bell*, 2013 U.S. Dist. LEXIS 170063, at *15-16 (rejecting argument that deduction for equipment was not for plaintiff's benefit because defendant required him to use the equipment). A deduction may benefit an employee if it merely makes purchasing goods or services more convenient for the employee. *Id*. (deductions benefitted employee where "they saved him from having to pay [the defendant] out-of-pocket for these expenses").

The IDA identifies several types of charges for which IIK's drivers will be responsible, such as an escrow deposit, insurance deductibles IIK incurs as a result of accidents, traffic tickets charged to IIK, and costs to repair damage caused by drivers. (IDA ¶¶ 3(e), (i), 4-6, 12-13.) Specific amounts are identified in the IDA for the deductibles and escrow deposit (*id*. ¶¶ 5-6, 13), but specific amounts cannot be identified for tickets and fines charged to IIK or repair amounts, as those amounts will vary. (Ex. 2 ¶ 11.) Also, the DLP and OAI agreements authorize IIK to take deductions from drivers' pay. (Exs. 6-7 to Ex. 4.) IIK made the following deductions from Plaintiff's pay: (1) escrow deposit; (2) OAI premiums; (3) DLP premiums;

(4) ELD monitoring[6]; (5) a $60 deduction for a dental expense Plaintiff asked IIK to cover; (6) expenses for traffic and parking tickets Plaintiff received while driving for IIK; (7) DLP deductibles for lawyers Plaintiff hired through DLP to defend him as to traffic citations; (8) an insurance deductible incurred by IIK for an accident and related damage caused by Plaintiff; (9) costs to repair tires damaged by Plaintiff's negligence; (10) costs for drug tests Plaintiff was required to take as part of a substance abuse program; (11) cash advances[7]; and (12) correction of an accounting mistake. (Ex. 8 to Ex. 4; Ex. 2 ¶¶ 24-28.)

Plaintiff's Memorandum rests on the faulty premise that any deduction is improper, but his own testimony demonstrates individual inquiries are required to determine whether IIK is liable to each driver for each deduction. He authorized several deductions IIK took from his pay – for drug tests, the dental expense, the traffic and parking tickets, and the DLP lawyer fees – and those deductions are not part of his lawsuit. (Ex. 4 at 89:18-90:4, 94:14-95:17, 131:4-12, 133:8-134:15.) He claimed IIK never discussed with him any of the deductions they took from his pay (*id*. at 144:3-12), which is contradicted by IIK's testimony. (Ex. 2 ¶¶ 19, 24-28.) IIK explained to and discussed with Plaintiff the deduction regarding repair costs for several damaged tires as a result of frozen brake pads. (*Id*. ¶¶ 25-26; Exs. B-C to Ex. 2.) Also, in February 2019, Plaintiff was involved in a hit-and-run accident in Indiana, backing into another truck in a loading bay while picking up a load for IIK, though he testified he did not back into any other truck, cause any damage to the other truck, or leave the scene of the accident. (Ex. 4 at 108:14-109-17, 112:7-113:10, 122:8-19, 123:6-11; Ex. 2 ¶¶ 26-28; Ex. D to Ex. 2.) Because of the damage caused, IIK

---

[6] ELD monitoring is a third-party service that provides 24/7 technical support to drivers regarding their electronic log devices (including in their native language) and safety alerts. (Ex. C to Mem. at 63:12-64:12, 65:5-13, 69:16-70:7, 70:20-73:8; Ex. 1 at 31:18-33:2.) IIK deducts $10 per week for ELD monitoring from drivers' pay to cover a portion of IIK's cost for the monitoring service. (Ex. C to Mem. at 70:8-19.)

[7] While Plaintiff identified a "Cash Advance" as improper (Ex. B to Mem. ¶ 21), he admitted it was not improper for IIK to deduct the remaining amounts from advances IIK provided to him, and cash advance deductions are not part of his lawsuit. (Ex. 4 at 81:8-84:2.) Regardless, "Cash Advance" deductions are not truly deductions. IIK provides drivers with advances to use for reimbursable work-related expenses. (Ex. C to Mem. at 61:17-62:19, 67:24-68:14.) Drivers submit receipts to IIK, which subtracts the reimbursable amounts from the advance amount, and any remaining amounts are "trued up" and deducted from the driver's paycheck. (*Id*. at 68:15-69:15.)

filed an insurance claim and charged Plaintiff the related deductible. (Ex. 2 ¶ 27; Ex. E to Ex. 2.) Plaintiff testified IIK did not show him video of the accident (Ex. 4 at 109:2-8, 113:13-17, 126:6-9), but IIK did show him the video, which shows him backing into another truck twice and then driving away. (Ex. 2 ¶ 28; Ex. 5 (video).) IIK discussed the video and insurance deductible with Plaintiff, who consented to the deduction for the deductible. (Ex. 2 ¶ 28.)

When analyzing the proof necessary to adjudicate both the elements of and defenses to Plaintiff's and each driver's claim under Section 9, as well as the form that trial on these issues would take, *see Gordon*, 2019 U.S. Dist. LEXIS 20604, at *26-27, individual mini-trials would be required to determine whether a driver consented to a particular deduction (whether under the IDA or otherwise) and/or whether a deduction benefitted a driver (and pre-December 2018 drivers would first have to be identified and located). IIK and its drivers sometimes discuss and authorize deductions in writing prior to IIK making deductions. (*Id*. ¶¶ 17, 19.) Also, not every driver had the same deductions, many drivers had deductions different than those taken from Plaintiff's pay, owner-operators had different types of deductions, certain deductions were reimbursed by IIK (such as for scales, tolls, or fuel), and some drivers had no deductions at all. (*See id*. ¶ 17; Ex. 3.) Also, some drivers asked IIK to advance funds for personal expenses, and IIK did so and then deducted the cost from the driver's pay. (Ex. 2 ¶ 12; Ex. 3 at Prokhorov, Drivers 7, 12, 20, 40, 53, 61, 63, 67, 96, 104, 116, 116, 127, 159, 182, 207, 224, 242, 252), so even if those deductions were not authorized in writing, they may be considered a benefit or convenience to the drivers and, thus, would be allowed under Section 9. Further, IIK cannot determine the type or amount of deductions it took from drivers whose relationship with IIK ended prior to December 2018. (Ex. 2 ¶ 40.)

Because common proof cannot establish all deductions from all drivers' pay violated Section 9, Plaintiff cannot satisfy the commonality and predominance requirements regarding his Section 9 claim. *See Andrews v. Chevy Chase Bank*, 545 F.3d 570, 577 (7th Cir. 2008) ("If the class certification only serves to give rise to hundreds or thousands of individual proceedings requiring individually tailored remedies, it

is hard to see how common issues predominate . . . ."); *Gordon*, 2019 U.S. Dist. LEXIS 20604, at *30 (predominance requirement not satisfied where individual inquiries and mini-trials would be required to determine whether putative class members consented to receive text messages from defendant, and plaintiff did not present viable approach to establish lack of consent on class-wide basis). Likewise, Plaintiff has not attempted to show how damages can be calculated on a class-wide basis, given the individual issues relating to IIK's potential liability (or lack thereof) to each driver, the disparity in types of deductions, and the lack of information regarding pre-December 2018 drivers. *Dailey*, 2014 U.S. Dist. LEXIS 119190, at *31-34 (denying certification where individualized damages determinations would require separate evidentiary hearings regarding each class member employee's damages, and plaintiff did not propose any feasible method for determining liability and damages on class-wide basis).

**Section 9.5**. Section 9.5 went into effect January 1, 2019 and requires employers to reimburse employees "for all necessary expenditures or losses incurred by the employee within the employee's scope of employment and directly related to services performed for the employer." 820 ILCS 115/9.5(a). "Necessary expenditures" are "reasonable expenditures or losses required of the employee in the discharge of employment duties and that inure to the primary benefit of the employer." *Id*. Employees must submit to the employer "appropriate supporting documentation within 30 calendar days after incurring the expense . . . ." *Id*. Plaintiff claims IIK failed to reimburse him for cell phone expenses, a GPS device, tools, and gloves, but he did not submit any receipts to IIK for the cell phone expenses or GPS device, and he did not remember when he incurred the expenses for the tools or gloves or when he submitted any related receipts to IIK. (Ex. 4 at 151:23-152:9, 153:2-6, 155:5-156:18, 159:12-160:3, 169:2-14.) Under the IDA, Plaintiff "shall be responsible for any personal expenses and supplies including . . . clothing and tools" (IDA ¶ 3(g)), so he cannot seek reimbursement for the tools and gloves. Further, IIK has no record that he ever requested reimbursement for any employment-related expenses, other than those identified on his paystubs, which were credited to his pay. (Ex. 2 ¶ 34; *see also* Ex. 8 to Ex. 4.) Because he did not seek reimbursement for

10

any "necessary expenditures" within 30 days after incurring the expenses, his claim under Section 9.5 cannot succeed. IIK cannot determine whether other drivers sought reimbursement for "necessary expenditures" without manually reviewing every expense submitted by every driver, determining whether it was reimbursed, and if not, determining whether it was submitted within 30 days and was a "necessary expenditure." (Ex. 2 ¶ 35.) Thus, Plaintiff cannot satisfy commonality or predominance with respect to his Section 9.5 claim. *Schneider*, 2016 U.S. Dist. LEXIS 191569, at *11-12, *26.

## II.        PLAINTIFF CANNOT SATISFY THE TYPICALITY REQUIREMENT.

"The typicality requirement addresses the separate concerns that (1) the representative's claim may fail on unique grounds, dooming meritorious claims of absent class members; or (2) the representative's claims may prevail on unique grounds, and the representative may therefore fail to adequately present alternative grounds under which the unnamed class members could prevail on their own claims." *Morr v. Plains All Am. Pipeline, L.P.*, No. 17-cv-163-SMY, 2021 U.S. Dist. LEXIS 191695, at *13 (S.D. Ill. Oct. 5, 2021) (citation omitted). "[W]here a representative's claim involves facts that distinguish her claim from the claims of her fellow class members, typicality is lacking." *Espejo v. Santander Consumer USA, Inc.*, No. 11 C 8987, 2016 U.S. Dist. LEXIS 142259, at *33 (N.D. Ill. Oct. 14, 2016) (citation and quotation marks omitted). "[A] unique defense will destroy typicality if it will consume the merits of the case. . . . because [unique defenses] eliminate a primary purpose of a class action: to allow the named plaintiffs to establish the bulk of the elements of each class member's claims when they prove their own." *Ellis v. Elgin Riverboat Resort*, 217 F.R.D. 415, 428 (N.D. Ill. 2003) (citations and quotation marks omitted).

Plaintiff's claims and defenses to his claims will be unique and will consume the merits of the case. He is not sure if he signed the IDA, the DLP agreement, or OAI enrollment form, suggesting his signature on the IDA might have been "fraud" and his signatures on the other two documents may have been forged. (Ex. 4 at 54:18-56:23, 62:10-23, 66:1-22, 75:8-76:2, 94:7-12.) If he did not sign those agreements, he could potentially prevail on his Section 9 claim on unique grounds, as drivers who signed those documents likely

11

cannot claim deductions made under those agreements were improper. (*See* Ex. 2 ¶ 18.) Plaintiff also testified IIK never discussed with him any of the deductions IIK took from his pay (Ex. 4 at 144:3-12), but IIK did discuss several of the deductions with him. (Ex. 2 ¶¶ 24-28.) IIK also discussed deductions with other drivers, who often authorized the deductions. (*Id.* ¶ 19.)

Likewise, his claims may fail on unique grounds. Because he did not provide two weeks' notice when he terminated his relationship with IIK, his escrow deposit was not returned, unlike most drivers. (Ex. 2 ¶¶ 9, 32-33; IDA ¶ 2(c).) There is a factual dispute as to whether Plaintiff authorized the deduction for the insurance deductible in connection with the hit-and-run accident. Also, as discussed above, he consented to multiple deductions that are not part of his lawsuit, so to the extent his IWPCA claim is based on those deductions and other drivers had similar deductions but did not consent to them (or benefit from them), his claim would fail on unique grounds. Plaintiff also testified he worked for both IIK and 11K, and 11K may have taken deductions from his pay (Ex. 4 at 169:22-173:7), which is inconsistent with Stetsiuk's testimony. (Ex. 1 at 44:6-11, 65:2-66:24.) If 11K took deductions from Plaintiff's pay, then IIK's defense regarding those deductions would be different than IIK's defenses to deductions IIK made. Also, his Section 9 claim cannot be typical of claims of owner-operators or drivers with different types of deductions than those taken from his pay because they will involve different facts. Finally, as discussed above, his Section 9.5 claim will likely fail, dooming claims of other drivers who may have timely submitted receipts for "necessary expenditures" but were not reimbursed. Thus, he cannot satisfy the typicality requirement.

### III.   PLAINTIFF IS NOT AN ADEQUATE CLASS REPRESENTATIVE.

Plaintiff is not an adequate class representative. First, as discussed above, Plaintiff cannot satisfy typicality in part because unique defenses apply to his claims that will not necessarily apply to other drivers' claims. *See Robinson v. Sheriff of Cook Cty.*, 167 F.3d 1155, 1157 (7th Cir. 1999) ("[I]f [a class representative's] claim is atypical, he is not likely to be an adequate representative . . . .") (citations omitted). IIK will have unique defenses to Plaintiff's Section 9 claim, including: (1) whether Plaintiff was entitled to

the return of his escrow deposit; (2) whether he authorized the deduction for the insurance deductible; (3) his admission that he authorized multiple deductions that are not part of his lawsuit; and (4) his claim that 11K may have taken deductions from his pay. Thus, he is not an adequate representative regarding his Section 9 claims. *E.g.*, *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 726 (7th Cir. 2011) ("The presence of even an arguable defense peculiar to the named plaintiff or a small subset of the plaintiff class . . . bring[s] into question the adequacy of the named plaintiff's representation. The fear is that the named plaintiff will become distracted by the presence of a possible defense applicable only to him so that the representation of the rest of the class will suffer.") (citations and quotation marks omitted). Also, his Section 9.5 claim may fail on unique grounds, and he does not have standing to represent any class of drivers who may have viable Section 9.5 claims. *Sandee's Catering v. Agri Stats, Inc.*, No. 20 C 2295, 2020 U.S. Dist. LEXIS 198557, at *13-14 (N.D. Ill. Oct. 26, 2020) ("Standing cannot be acquired through the back door of a class action. The plaintiff must be part of the class to have standing as a class representative, that is, *he must possess the same interest and suffer the same injury shared by all members of the class he represents*.") (citations and quotation marks omitted) (emp. added).

Second, Plaintiff's claims are antagonistic to or conflict with putative class members' claims because he testified: (1) he was not sure if he signed the IDA, DLP agreement, or OAI enrollment form and believes his signatures on the latter two documents may have been forged; (2) he authorized certain deductions that are not part of his lawsuit; and (3) he did not submit (or have any proof that he submitted) receipts for reimbursement of his employment-related expenses. *Ellis*, 217 F.R.D. at 429 ("If the representative and the class members have antagonistic or conflicting claims, the class is not fairly and adequately represented.") (citation and quotation marks omitted). Third, Plaintiff has serious credibility issues. In February 2020, he threatened to kill Kazniyenko in a text message. (Ex. 2 ¶¶ 29-30; Ex. F to Ex. 2; Ex. 4 at 144:22-145:17, 146:3-6 (authenticating text messages).) Further, as discussed above, Plaintiff claims he was not involved in the hit-and-run accident and was not shown the video, which is contradicted

13

by IIK's testimony (Ex. 2 ¶ 28), calling into question Plaintiff's truthfulness. *CE Design Ltd.*, 637 F.3d at 726 ("A named plaintiff who has serious credibility problems . . . may not be an adequate class representative.") (citations omitted); *Physicians Healthsource, Inc. v. Allscripts Health Solutions Inc.*, 254 F. Supp. 3d 1007, 1024 (N.D. Ill. 2017) ("One who intentionally does not tell the truth about the case cannot be an effective class representative.") (citations omitted).

## IV.    PLAINTIFF CANNOT SATISFY THE SUPERIORITY REQUIREMENT.

Rule 23(b)(3)'s superiority requirement "must be assessed in terms of class members' interests in proceeding individually, the extent and nature of existing litigation, the desireability [sic] of litigating the claims in the instant forum, and manageability concerns, which in turn requires a court to consider the costs and benefits of the class device." *Espejo*, 2016 U.S. Dist. LEXIS 142259, at *36 (citation and quotation marks omitted). Due to the issues identified in Part I, individual mini-trials would be necessary to determine (1) whether each non-Illinois resident worked enough in Illinois for the IWPCA to apply and, if so, (2) which deductions each driver consented to and/or benefitted the driver and (3) whether each driver timely submitted documentation to IIK for "necessary expenditures" that were unreimbursed. Further, any drivers whose relationship with IIK ended prior to December 2018 would first have to be located, and then they would have to submit some evidence of deductions or the amount of work performed in Illinois for IIK, which they may not have, as their relationship with IIK ended many years ago. Thus, maintaining this litigation as a class action is not manageable, and Plaintiff cannot satisfy the superiority requirement. *E.g.*, *Andrews*, 545 F.3d at 577 ("If the class certification only serves to give rise to hundreds or thousands of individual proceedings requiring individually tailored remedies, it is hard to see . . . how a class action would be the superior means to adjudicate the claims."); *Gordon*, 2019 U.S. Dist. LEXIS 20604, at *32 (superiority requirement not met "due to individualized factual inquiries required to adjudicate class members' claims" and lack of viable alternative procedural devices); *Espejo*, 2016 U.S. Dist. LEXIS 142259, at *39 (noting "substantial difficulties involved in identifying putative class members" weighed

against finding of superiority). Also, the IWPCA provides for attorneys' fees and costs for successful litigants, as well as statutory interest that accumulates monthly on any amounts improperly withheld, 820 ILCS 115/14(a), so drivers have sufficient incentive to pursue individual lawsuits. *See Espejo*, 2016 U.S. Dist. LEXIS 142259, at *39 (denying putative class action where the statute at issue "has built-in incentives for aggrieved plaintiffs to litigate individually—such as the opportunity to collect statutory damages"); *Vulcan Golf, LLC v. Google Inc.*, 254 F.R.D. 521, 535 (N.D. Ill. 2008) (class action not superior method of adjudication where "the concern that plaintiffs would not have the incentive to sue individually is not present in the instant case"). Thus, Plaintiff cannot show superiority for this additional reason.

## V.      THE CLASS DEFINITION IS OVERLY BROAD.

Finally, the Court should deny certification because the class definition is overly broad. The applicable statute of limitations for IWPCA claims is five years. *Jaroch v. Fla. Fruit Juices, Inc.*, No. 17 C 8518, 2020 U.S. Dist. LEXIS 46636, at *10 (N.D. Ill. Mar. 18, 2020); *People ex rel. Ill. DOL v. Tri State Tours, Inc.*, 795 N.E.2d 990, 996 (Ill. App. 2003). This action was filed on November 17, 2020, so any claims arising prior to November 17, 2015 are time barred. However, Plaintiff seeks to certify a class extending back to November 2010. (Mem. at 1.) Also, Plaintiff's proposed class will include persons who have no viable claim against IIK because: (1) 16 drivers did not have any deductions taken by IIK (Ex. 3 (Drivers 16, 60, 102, 107, 136, 141, 155, 164, 177, 209, 217, 221, 231, 239, 248, 255); and (2) 7 drivers only had deductions for OAI and/or DLP, both of which are authorized by written agreements (*id*. (Drivers 35, 69, 211, 212, 230, 258, 259); Ex. 2 ¶¶ 14-15, 18.) The Court should deny Plaintiff's Motion for this additional reason. *E.g.*, *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 677 (7th Cir. 2009) ("[A] class should not be certified if it is apparent that it contains a great many persons who have suffered no injury at the hands of the defendant."); *Erlandson v. ConocoPhillips Co.*, No. 09-99-DRH, 2010 U.S. Dist. LEXIS 97474, at *6 (S.D. Ill. Sep. 17, 2010) ("Plaintiff's proposed class definition is overly broad. The proposed class includes individuals who could not have viable claims against Defendants.").

15

Dated:  September 2, 2022

**IIK TRANSPORT, INC., 11K TRANSPORT, INC., IVAN KAZNIYENKO, AND SERGII STETSIUK**

By:     /s/ Andrew D. LeMar
         One of their attorneys

Stephen C. Voris (svoris@burkelaw.com)
Andrew LeMar (alemar@burkelaw.com)
Burke, Warren, MacKay & Serritella, P.C.
330 North Wabash Avenue, 21st Floor
Chicago, Illinois 60611-3607
Telephone:  (312) 840-7000
Facsimile:  (312) 840-7900

16

## CERTIFICATE OF SERVICE

I hereby certify that on September 2, 2022, I caused the foregoing Defendants' Opposition to Plaintiff's Motion for Class Certification Pursuant to Fed. R. Civ. P. 23 to be filed electronically with the Northern District of Illinois, and served upon all parties registered to receive notice via the Court's CM/ECF system.

/s/ William Daitsman