UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANTHONY JOHN GEORGE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| IIK TRANSPORT, INC., and | ) |
| IVAN KAZNIYENKO, | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

## I.       INTRODUCTION

Plaintiff seeks preliminary approval of a class action settlement agreement entered into between the Parties in this action following nearly five years of hard-fought litigation.[1] This case has been brought as a Rule 23 Class Action on behalf of persons who provided delivery services for Defendant IIK Transport, Inc. Plaintiff's primary claim is that he and other delivery drivers were misclassified as independent contractors pursuant to the Illinois Wage Payment and Collection Act ("IWPCA"), 820 Ill. Comp. Stat. 115/1 et seq., and, as a result of this misclassification, IIK violated the IWCPA by making unlawful deductions from the delivery drivers' wages. Defendants, however, claim the drivers were properly classified as independent contractors and not employees; many, if not all, of the drivers did not perform work in Illinois or sufficient work in Illinois to avail themselves of the protection of the IWPCA; and that any deductions Defendants made were properly authorized, under the IWPCA, among other defenses.

On March 30, 2023, this Court granted Plaintiffs' motion for class certification under Fed. R. Civ. P. 23 for their IWPCA claims. Dkt. 81. The Court certified a class consisting of "[a]ll individuals who worked in Illinois as delivery drivers for IIK between November 17, 2010, and the present and who were classified as independent contractors." Id. Notice of the class action was mailed to several hundred class members, over a hundred of whom subsequently requested exclusion from the class.[2]

The proposed settlement, which was negotiated on the eve of trial with the assistance of experienced mediator Peter R. Meyers, creates a non-reversionary $500,000.00 settlement fund, meaning no portion of the settlement will go back to the Defendants. If approved by the Court, notice of the settlement and its terms will be mailed and emailed to all class member for whom

---

[1] The proposed settlement agreement is attached hereto as Exhibit A.

[2] Individuals who submitted requests for exclusion will not be part of the Settlement Class in this case.

contact information is available; and will be published in three major Chicago-area newspapers (one Ukranian and one Russian) in an effort to reach individuals who worked for IIK prior to 2018, and for whom Defendants do not have contact information. Settlement Class Members will be sent a pro rata share of the settlement, based on the amount of deductions taken from their pay.[3] Thus, Settlement Class Members who suffered a larger share of deductions will receive more compensation in the settlement.

Although the settlement amount is far below the total amount of damages calculated by Class Counsel, they believe that the settlement is fair and reasonable under the circumstances, primarily in light of the risk of non-recovery if this matter is litigated through a final judgment as a result of the Defendants' financial condition. After reviewing and analyzing the Defendants' private financial statements, and after Defendants made clear that a more significant judgement would cause them to file for bankruptcy (see Lichten Declaration filed under seal) it became clear to Class Counsel that Defendants could not sustain a verdict or even settlement for a greater amount, and would likely not be able to continue to operate if the case continued to trial and judgment.[4] Plaintiff, therefore, requests that the Court issue an Order 1) granting preliminary approval of the class action settlement; 2) approving the proposed Notice in substance and form; 3) authorizing Class Counsel to initiate the Notice process set forth in the parties' Settlement Agreement as described below; and 4) setting a date for a hearing on final approval of the class action settlement for 90 days after the date of preliminary approval.

## II.     FACTUAL AND PROCEDURAL BACKGROUND.

---

[3] For those settlement class members for whom deductions data is not available, settlement shares will be based on the number of weeks they worked for IIK.

[4] A supporting affidavit detailing Defendants' financial condition will be provided to the Court for *in camera* review.

Plaintiff Prokhorov initiated this lawsuit on November 17, 2020, asserting claims for misclassification and unlawful deductions under the Illinois Wage Payment and Collection Act ("IWPCA"). Dkt. 1. The Court in this case certified a class of other similarly situated delivery drivers (Dkt. 81), and found, on summary judgment, that the Plaintiff class are employees of Defendant IIK. Dkt 169. The Court also outlined in its decision several categories of deductions which Plaintiff and the class may be able to recover under the IWPCA, and it also enumerated several deductions, including expense reimbursement that it said were not recoverable and which significantly lowered the amount of recoverable damages, See Id. Trial was set for April 29, 2025 in this case. Dkt. 177.

Ahead of trial, Class Counsel filed motions challenging the sufficiency of the data provided by Defendants; Defendants filed a motion to postpone the trial in light of Mr. Prokhorov's passing, and Class Counsel filed a Motion to substitute Mr. George as a named Plaintiff. See Dkts. 184, 185, 188, and 194. On April 11, after an in-person hearing, the Court allowed the motion to substitute and denied the motion to continue trial. Dkt. 196. In the following weeks, the Parties engaged in informal settlement discussions, and, on April 23, 2025 participated in a full day mediation before experienced Chicago-area employment mediator Peter E. Meyers, which has resulted in the settlement currently before the Court. Lichten Decl. (attached hereto as Exhibit B) ¶ 8. As set forth below, while Class Counsel acknowledge that the settlement is less than they would ordinarily find reasonable there are several important reasons (discussed below) that make this resolution fair under the circumstances.

### III.     TERMS OF THE FINANCIAL SETTLEMENT.

The total settlement amount is a non-reversionary amount of $500,000.00. Ex. A at (IV)1. As discussed below, the amount to be paid to class members whom it is likely that Class Counsel

will be able to reach will constitute a significant share of their actual allowable deductions. (See discussion below).

The settlement will be administered as follows: Notice will be mailed and emailed to class members for whom contact information is available. Ex. A at (VII)1. Notice will also be published in English, Ukrainian, and Russian in major Chicago-area publications in an effort to reach those individuals who worked for IIK prior to 2018, and for whom contact information is not available, because of the fire at Defendants' office in December of 2018. Id.. Settlement Class Members for whom deductions data is available will receive a pro rata settlement share based on the amount of deductions taken from their pay; Settlement Class Members for whom deductions data is not available will receive a settlement share based on the number of weeks in which they worked for IIK. Id. at (V)4. The settlement is non-reversionary, meaning that any unclaimed shares will be redistributed to the participating Settlement Class Members. Id. at (V)5-6. However, if Settlement checks that are not cashed, are less than $5,000.00 the remaining amount will be paid to a *cy pres* beneficiary, Razom for Ukraine, an organization dedicated to supporting families impacted by the war in Ukraine. Id. at (V)5. The Parties propose that, if approved by the Court, the Class Settlement Fund of $500,000 be used to:

1.    Pay service awards in the total amount of $15,000.00 to Settlement Class Members who provided invaluable service and support to Class Counsel in this litigation;

2.    Pay an award to Class Counsel not to exceed 30% of the Class Settlement Fund for attorney's fees, litigation and mediation expenses and costs of administering the settlement for a total of $150,000.00, a significant reduction of at least 50% from Class Counsel's lodestar. The remainder of the Class Settlement Fund after payments under Section 1 and 2 will be referred to as the "Net Settlement Fund."

4

3.      From the Net Settlement Fund, totaling $335,000.00, pay settlement awards to the Settlement Class Members.[5]

## IV.     PROCEDURES AND FORMULA FOR DISTRIBUTION OF THE CLASS FUNDS.

If this Court gives preliminary approval to the proposed settlement, the settlement administration will be conducted by Class Counsel at Lichten & Liss-Riordan, who maintain an in-house staff and electronic systems designed for that purpose. Ex. B ¶ 15. This will save thousands of dollars, which will be made available to Class Claimants. Id. A Notice (attached as Exhibit A to the Settlement Agreement) will be sent to each Settlement Class Member informing them of their right to participate in the settlement or object to the settlement. The notice will also inform individuals that this settlement will resolve all IWPCA claims that they may have had against Defendants through March 30, 2023.

Within fourteen (14) days after the Court grants preliminary approval, Class Counsel will send notice of the settlement, in English, Ukrainian and Russian, to Settlement Class Members' last-known mail and email addresses. Ex. A at (VII)1. If Notices and claim forms come back as undeliverable at the address provided, Class Counsel will, using people finder software they have purchased, attempt to obtain more accurate addresses for those individuals, and will resend the notices. Id. Class Counsel will also publish notice of the settlement in in three Chicago-area newspapers, one of which will be a Russian newspaper and one of which shall be a Ukrainian newspaper, both of which must have high circulation in the Chicago area. Id.

Defendants will deposit the Settlement Fund of $500,000.00 with Class Counsel within 21 days of the Court's Order granting final approval. Ex. A at V(2). Settlement checks will be sent

---

[5] Specifically, $35,000.00 of the Net Settlement Amount will be set aside for settlement awards to individuals who worked for IIK prior to 2018, and for whom contact information is not available, but who may respond to the Notice by publication. Ex. A at XX.

to Settlement Class Members as soon as practicable thereafter, and shall remain valid for 90 days. Id. at V(5). Importantly, the settlement is non-reversionary – meaning that to the extent that there are unclaimed shares or class members who are not ultimately found, any remaining amounts will be redistributed to those class members who cashed their checks. Id. at V(6). Finally, should there be some unpaid money remaining as a result of checks not being cashed under $5,000.00 such remaining funds will go to a *cy pres* beneficiary, Razom for Ukraine.[6] Id. at V(5).

### V. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND THUS, SHOULD BE PRELIMINARIY APPROVED.

#### A. The Proposed Settlement Meets the Legal Standard for Preliminary Settlement Approval.

It is well established that courts favor settlements of lawsuits over continued litigation. See, e.g., Isby v. Bayh, 75 F.3d 1191, 1196 (7th Cir. 1996); Air Line Stewards & Stewardesses Ass'n, Local 550 v. Trans World Airlines, Inc., 630 F.2d 1164, 1166 (7th Cir. 1980) (providing that "[f]ederal courts look with great favor upon the voluntary resolution of litigation through settlement"); Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee, 616 F.2d 305, 313 (7th Cir. 1980) overruled on other grounds ("In the class action context in particular, 'there is an overriding public interest in favor of settlement.'") (quoting Cotton v. Hinton, 559 F.2d 1326, 1331 (5th Cir. 1977); In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged.")).

Pursuant to Fed. R. Civ. P. 23(e), "[t]he claims, issues, or defenses of a certified class . . . may be settled, voluntarily dismissed, or compromised only with the court's approval." Before

---

[6] Razom for Ukraine "is dedicated to upholding the principles of the Revolution of Dignity (Maidan) and actively contributing to the establishment of a secure, prosperous, and democratic Ukraine." https://www.razomforukraine.org (last visited August 22, 2024). Given that many of the class members in this case are of Ukrainian origin, this cy prs contribution will directly benefit the class members, their family and community.

6

granting approval, a court should weigh whether "the proposed decree is lawful, fair, reasonable, and adequate." Illinois v. City of Chicago, 2019 WL 398703, at *4 (N.D. Ill. Jan. 31, 2019) (quoting EEOC v. Hiram Walker & Sons, Inc., 768 F.2d 884, 889 (7th Cir. 1985)) (quotations omitted). Courts should "not focus on individual components of the settlements, but rather view them in their entirety in evaluating their fairness" and should consider the facts "in the light most favorable to the settlement." Id. at 1199 (quoting Isby, 75 F.3d at 1199) (quotations omitted). Furthermore, the decision of whether to approve a proposed settlement is left to the discretion of this Court. Wong v. Accretive Health, Inc., 773 F.3d 859, 862 (7th Cir. 2014).

When conducting a fairness determination, courts consider: "(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed." Id. at 863 (quoting Gautreaux v. Pierce, 690 F.2d 616, 631 (7th Cir.1982)). "The most important factor relevant to the fairness of a class action settlement is the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." Id. at 864 (quoting In re Gen. Motors Corp. Engine Interchange Litig., 594 F.2d 1106, 1132 n. 44 (7th Cir.1979)). Generally, "[w]hen sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement." City P'ship Co. v. Atl. Acquisition Ltd. P'ship, 100 F.3d 1041, 1043 (1st Cir. 1996) (citation omitted). Moreover, "the assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." Binissia v. ABM Indus., Inc., 2017 WL 4180289, at *6 (N.D. Ill. Sept. 21, 2017) (quoting Burkholder v. City of Ft. Wayne, 750 F.Supp.2d

990, 995 (N.D. Ind. 2010)). Finally, an employer's financial condition may also be considered in determining whether a settlement is fair, adequate, and reasonable.[7]

Review of a proposed class settlement involves two steps: preliminary approval and a final "fairness hearing." Manual for Complex Litigation (Fourth) § 13.14. At the preliminary approval stage, "the court's task is merely to 'determine whether the proposed settlement is within the range of possible approval,' not to conduct a full-fledged inquiry into whether the settlement meets Rule 23(e)'s standards." Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc., 2011 WL 3290302, at *6 (N.D. Ill. July 26, 2011) (quoting Armstrong, 616 F.2d at 314 (noting that at the final fairness hearing, the court will "adduce all information necessary to enable [it] intelligently to rule on whether the proposed settlement is fair, reasonable, and adequate")) (citing In re Prudential Sec. Inc. Ltd. P'ships Litig., 163 F.R.D. 200, 209 (S.D.N.Y. 1995) (holding preliminary approval determines whether the settlement is "possibly fair, reasonable, and adequate")). Thus, "courts in this district have performed 'a more summary version' of the final fairness inquiry at the preliminary approval stage." Id., at *6 (citing In re AT & T Mobility Wireless Data Servs. Sales Litig., 270 F.R.D. 330, 346 (N.D. Ill.2010); Kessler v. Am. Resorts Int'l's Holiday Network, Ltd., 2007 WL 4105204, at *5 (N.D. Ill. Nov.14, 2007) ("Although this [fair, reasonable, and adequate] standard and the factors used to measure it are ultimately questions for the fairness hearing that comes after a court finds that a proposed settlement is within approval range, a more summary version of the same inquiry takes place at the preliminary phase."). The Court's role at the preliminary approval stage is not "resolving the merits of the controversy or making a precise

---

[7] See e.g., Redman v. RadioShack Corp., 768 F.3d 622, 632 (7th Cir. 2014) (considering defendant's solvency when determining whether to approve the settlement); Lucas v. Vee Pak, Inc., 2017 WL 6733688, at *9-11 (N.D. Ill. Dec. 20, 2017) (finding proposed class settlement amount reasonable given defendant's inability to withstand a large judgment); Kleen Prods. LLC v. Int'l Paper Co., 2017 WL 5247928, at *2 (N.D. Ill. Oct. 17, 2017) (considering defendants' ability to pay when determining reasonableness of class settlement); Swift v. Direct Buy, Inc., 2013 WL 5770633, at *7 (N.D. Ind. Oct. 24, 2013) (citing In re Wireless Tel. Fed. Cost Recovery Fees Litig., 396 F.3d 922, 932 (8th Cir. 2005)) ("The financial condition of the defendant in class action settlement is a legitimate—if not entirely pragmatic—consideration.").

determination of the parties' respective legal rights." Hiram Walker & Sons, Inc., 768 F.2d at 889. Indeed, courts are "entitled to rely heavily on the opinion of competent counsel." Gautreaux, 690 F.2d at 634 (quoting Armstrong, 616 F.2d at 325) (quotations omitted). Once a settlement is preliminarily approved by the Court, notice of the proposed settlement and the fairness hearing is provided to class members. At the subsequent fairness hearing, class members may formally object to the proposed settlement.

**B. The Proposed Settlement Satisfies the Requirements for Preliminary Approval.**

Plaintiff has alleged that he and the members of the class were misclassified as independent contractors under the IWPCA, and that as a result IIK took unlawful deductions from their pay in violation of the IWPCA. This Court ultimately agreed that Plaintiff and class members were employees of IIK under the IWPCA (Dkt. 169). However, Plaintiff still must prove that the deductions taken from the class members' pay were unlawful under the IWPCA, and Defendants vehemently dispute Plaintiff's deductions claims in this case. In fact, although Class Counsel do not agree with this ruling, this Court has granted summary judgement in Defendants' favor on Plaintiff's expense reimbursement claim, and on deductions for occupational accident insurance, Drivers' Legal Plan, and ELD Monitoring, thereby sharply reducing the amount of the deductions that Plaintiff and class members could recover. See Dkt. 169.

Although Class Counsel believe that Plaintiff and the class in this case have strong and meritorious claims on the remaining deductions claims and for statutory interest (which is significant) (see 820 Ill. Comp. Stat. 115/14) Plaintiff concluded that a settlement with Defendants is preferable to the significant risks for the class in pursuing this matter through trial. For one, as described above, IIK will argue that even though it took deductions from class members' pay, these deductions do not violate the IWPCA, either because they are for the class members' benefit, or because they are authorized by the class members' contracts. Ex. B ¶ 10. While Class Counsel

do not believe that the deductions taken by IIK meet the requirements outlined by the Illinois Department of Labor's regulations, there is a risk that the Court may find that some of these remaining deductions are not recoverable under the IWPCA. Id.

Second, and most importantly, in preparation for the mediation, Defendants provided Class Counsel with detailed information regarding their financial condition. Class Counsel analyzed the financial information to ascertain IIK's financial condition and ability to satisfy a judgment (see Lichten Declaration filed under seal) It is unlikely that IIK could satisfy a fulsome judgment entered in this case. Third, and as this Court has been aware there have already been an extraordinary number of requests to opt out of this case for reasons Plaintiff will not resurrect here. In addition, lead Plaintiff Prokhorov died in March, and, in preparing for trial, despite strenuous efforts to secure multiple witnesses to testify (see Lichten Decl. filed under seal) Class Counsel were only able to secure three class members to testify, all of whom asked to testify remotely because of work commitments. Thus, despite litigating this case for nearly five years, Class Counsel have determined that, based on IIK's financial situation, and these other considerations, the best interests of the class are served by obtaining substantial compensation now in the form of the settlement before the Court, rather than face the risk of being unable to recover anything at the conclusion of this action.

In addition, because the settlement amount in this case represents a significant percentage of the actual deductions for the class, the proposed settlement is fair, reasonable, and adequate. In reaching this conclusion, Class Counsel and their data analyst have spent considerable time performing calculations and preparing a detailed damages model. Class Counsel calculate that, for the class members for whom Class Counsel have actual data, the deductions taken from their pay only amount to $384,252.00. See declaration of Muskan Garg, attached hereto as Exhibit C, ¶ 2. Class Counsel extrapolate that the deductions for 57 class members identified for whom no data

was given would likely increase the damages for deductions to about $525,000. Id. at ¶ 3. While the Parties are unlikely to locate class members from 2010 to 2018, Defendants have asserted – and Class Counsel have no way to dispute – that IIK did not make deductions during that period of time for items that this Court has found recoverable. It is certainly true, however, that adding the statutory interest penalty (of 2% up to July 2021 and 5% per month thereafter), the total estimated damages (excluding the time period of 2010 to 2018) is approximately $1,100,000. Id. at ¶ 4. While certainly less than Plaintiffs had hoped for at the outset of this litigation, the $500,000.00 settlement is still substantial, representing approximately 50% of Settlement Class Members' actual damages. Ex. B ¶ 14. Given the potential risks associated with proceeding with trial, the settlement is reasonable.

Furthermore, the procedural background of this matter supports a finding that the settlement was negotiated at arm's length by experienced counsel and resolved bona fide disputes between their clients with respect to liability and the amounts due to members of the class. The case presented numerous and vigorously contested issues related to the classification of the class members and whether certain legal defenses provided IIK with a complete or partial defense to liability. As detailed previously, the Parties have engaged in extensive litigation in this Court since this lawsuit was filed in 2020, conducting extensive written discovery, completing depositions, briefing multiple motions to compel, class certification and summary judgment.

Additionally, Plaintiff and the class are represented by highly experienced and competent counsel who have litigated numerous wage and hour cases aggressively and successfully. Notably, lead counsel, Attorney Harold Lichten, has litigated, tried, and settled numerous class action wage-and-hour cases across the country is a recognized expert in labor and employment law.[8] Mr.

---

[8] Among other things, Mr. Lichten successfully argued the landmark cases on the Massachusetts Independent Contractor Law, Somers v. Converged Access, Inc., 454 Mass. 582 (2009) and the New Jersey wage law, Hargrove v. Sleepy's, LLC, 106 A.3d 449, 453 (N.J. 2015). Both cases dealt with the same ABC employment relationship test

Lichten's law firm, Lichten & Liss-Riordan, P.C., are pioneers in the field of worker misclassification and has litigated and settled numerous class action matters filed in the federal courts.[9] Those settlements contained very similar terms to the proposed settlement in this case, including the same basic method for notifying class members and distributing the settlement proceeds. Attorney Lichten and other attorneys at Lichten & Liss-Riordan, P.C. have worked closely with co-counsel Julia Bikbova on several cases, including on Tsybikov v. Dovgal, 2023 WL 4029823 (N.D. Ill. June 15, 2023), a similar case involving over-the-road drivers.[10] Class Counsel are thus well aware of the law in this area, and their experience has provided the class with a high degree of expertise, which contributed to a favorable resolution of their claims against IIK. In light of the arm's-length negotiations in this case, which were conducted with the assistance of a top neutral mediator, and Class Counsel's prior experience and expertise in this area of law, the Court should find this proposed settlement to be fair, reasonable, and adequate and should issue preliminary approval. See Armstrong, 616 F.2d at 314 (settlement agreement need only fall within reasonable range of possible approval to be preliminarily approved).

---

included in the IWPCA. In the Seventh Circuit, Mr. Lichten has argued Johnson v. Diakon Logistics, Inc., 44 F.4th 1048, 1053 (7th Cir. 2022) (holding that Illinois law applies to drivers claims arising under IWPCA); and Costello v. BeavEx, Inc., 810 F.3d 1045 (7th Cir. 2016) (granting summary judgment and class certification for class of delivery drivers misclassified as independent contractors).

[9] Taveras v. XPO Last Mile, Inc., C.A. No. 15-1550 (D. Conn. Aug. 11, 2017) (Doc. # 123); Martins v. 3PD, Inc., C.A. No. 11-11313 (D. Mass. March 2, 2016) (Doc. # 209); Badia v. Homedeliverylink, Inc. et al., C.A. No. 12-06920-WJM (D.N.J. Sept. 25, 2015) (Doc. # 99); Anderson v. HomeDeliveryAmerica.com, et al., C.A. No. 11-cv-10313 (D. Mass. Dec. 17, 2014) (Doc. #108); Mansingh v. Exel Direct, Inc., C.A. No. 12-11661 (D. Mass. May 7, 2014); Kiely v. TripAdvisor, LLC, C.A. No. 08-11284 (D. Mass. Aug. 8, 2011) (Doc. #52); Apana et al. v. Fairmont Hotels, Inc., C.A. No. 08-cv-00528 (D. Hawaii 2011); Carreiro, et al. v. Huntleigh Corp., et al., C.A. No. 08-10819 (D. Mass.); Elienberg v. RCN, C.A. No. 09-10912 (D. Mass.); Maliniski et al. v. Starwood Hotels, C.A. No. 08-11859 (D. Mass.); Monahan et al. v. WHM LLC d/b/a LXR Luxury Resorts and Boca Resorts, Inc. d/b/a Boca Raton Resort & Club, C.A. No. 09-CV-80198 (S.D. Fla.); Hayes et al. v. Aramark Sports Service LLC, C.A. No. 08-10700 (D. Mass.); Niles et al. v. Ruth's Chris Steak House, C.A. No. 08-07700 (S.D.N.Y.); Mitchell et al. v. PrimeFlight Aviation Services, C.A. No. 08-cv-10629 (D. Mass.); Barreda et al. v. Prospect Airport Svcs., C.A. No. 08-323 (N.D. Ill.); Miller et al. v. SBLI, C.A. No. 08-10267 (D. Mass.).

[10] Attorney Bikbova litigated and was appointed class counsel in the following class action settlement in federal court as well, separately from Lichten & Liss-Riordan. Bruger v. Olero, Inc., 2023 WL 6290090 (N.D. Ill. Sept. 27, 2023); Plestsov v. GTS Transp. Corp., 2021 WL 534666 (N.D. Ill. Feb 12, 2021).

## VI.    THE PROPOSED SERVICE AWARDS ARE FAIR AND REASONABLE.

The settlement also proposes incentive payments of up to $15,000.00 for up to three Settlement Class Members who have provided invaluable assistance to Class Counsel in this litigation and in preparing for trial. These proposed incentive payments are fair and reasonable, given that these individuals undertook the risk of stepping forward and agreeing to assist Class Counsel and their co-workers and because it was through their initiative that this recovery was obtained. Courts have widely recognized that incentive payments serve an important function in promoting enforcement of state and federal law by private individuals, while also encouraging class action settlements.[11] A 2006 study found that while the average incentive payment approved in class action settlements was around $15,000, awards in wage cases were generally higher.[12] As one court observed, "[incentive] awards are particularly appropriate in the employment context. In employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers." Frank v. Eastman Kodak Co., 228 F.R.D. 174, 187 (W.D.N.Y. 2005). Given these Settlement Class Members' significant

---

[11] See Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998) (holding "named plaintiff is an essential ingredient of any class action," affirming incentive award of $25,000 to the named plaintiff); In re Relafen Antitrust Litig., 231 F.R.D. 52, 82 (D. Mass. 2005); Douglas v. W. Union Co., 328 F.R.D. 204, 218-19 (N.D. Ill. 2018) (granting incentive award to named plaintiff); In re Compact Disc Min. Advertised Price Antitrust Litig., 292 F. Supp. 2d 184, 189 (D. Maine 2003); Sheppard v. Consol. Edison Co. of N.Y., Inc., 2002 WL 2003206, at *5-6 (E.D.N.Y. Aug. 1, 2002) (collecting cases approving incentive payments).

[12] Scovil v. FedEx Ground Package Sys., Inc., 2014 WL 1057079, at *6 (D. Me. Mar. 14, 2014) (citing Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study,* 53 UCLA L. Rev. 1303, 1308 (2006)). The court in Scovil found that recent awards in employment cases reached $30,000 and higher. Id. (citing Cook, 142 F.3d at 1016 (approving $25,000 incentive award for one named plaintiff)); see also Brandon v. 3PD, Inc., No. 13-CV-03745, slip op (N.D. Ill. Jan. 26, 2016) (approving service awards of $20,000 to two plaintiffs, and $10,000 to one plaintiff); In re Broiler Chicken Antitrust Litig., 2021 WL 5578878, at *4-5 (N.D. Ill. Nov. 30, 2021) (granting $15,000 incentive award to named plaintiffs); Briggs v. PNC Fin. Servs. Grp., Inc., 2016 WL 7018566, at *3 (N.D. Ill. Nov. 29, 2016) (awarding $12,500 to named plaintiffs); Zolkos v. Scriptfleet, Inc., 2015 WL 4275540, at *3 (N.D. Ill. July 13, 2015) (awarding $148,000 in incentive payments ranging from $3,500 to $10,000 per plaintiff).

contributions to this matter, the fact that they faced potential retaliation from IIK and/or future employers in the trucking industry, the proposed incentive payments are fair and reasonable.

## VII.   THE REQUESTED ATTORNEYS' FEES AND COSTS ARE MORE THAN FAIR, REASONABLE, AND SUPPORTED BY APPLICABLE PRECEDENT.

In the motion for final approval, Class Counsel will request an award of attorneys' fees and costs of 30% of the total settlement, or $150,000.00. This award would cover all costs incurred to date by Class Counsel, (over $10,000.00) as well as the significant costs Class Counsel will incur in the next several months administering the settlement fund, calculating actual share distributions, taking care of all mailings and filings, etc. Ex. B ¶¶ 15, 18. To date, Class Counsel have paid for the substantial costs associated with depositions, half of the mediation fees, sending out class notice, and fees related to filing and investigating this case. Id. ¶ 18. Class Counsel will incur additional expenses related to mailings and notice by publication, and other costs associated with administering the class fund, and their ability to administer the class settlement without hiring a class action settlement administrator will result in a substantial savings to the settlement fund, which can then be more properly used to pay distribution shares to class members. Id. ¶¶ 15, 18. Thus, after costs, Class Counsel will be receiving less than 27% of the Gross Settlement Amount.

Courts generally favor awarding fees from a common fund based upon a percentage of the fund. As the Supreme Court has explained:

> [T]his Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to reasonable attorney's fee from the fund as a whole . . . . Jurisdiction over the fund involved in the litigation allows a court to prevent . . . inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionally among those benefited by the suit.

Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980) (citations omitted). Indeed, a 33% attorneys' fee award in a common fund case has been consistently approved as reasonable in wage and hour

14

cases in the Northern District of Illinois.[13] Given this precedent, approving a one-third recovery for attorneys' fees and costs in this class action case, which includes all costs and expenses, is reasonable. This is especially true where Class Counsel will be absorbing the costs of administering the settlement by performing this function themselves. Here, although Class Counsel's lodestar is nearly $500,00.00, they will net less that 36% of that amount. See Lichten Decl. ¶ 21.

### VIII. CONCLUSION.

For the reasons set forth herein, Plaintiff respectfully requests that this Court grant preliminary approval of this proposed settlement, enter the proposed Order attached as Exhibit D, and allow Plaintiff to send to Settlement Class Members the proposed Notice attached as Exhibit A to the Settlement Agreement.

---

[13] See McCue v. MB Fin., Inc., 2015 WL 4522564, at *3 (N.D. Ill. July 23, 2015) (finding that the Seventh Circuit's decision in Pierce v. Visteon Corp., 2015 WL 3985985 (7th Cir. July 1, 2015) did not preclude a percentage of the common fund recovery in the settlement context and awarding 1/3 of common fund as attorneys' fees); Kujat v. Roundy's Supermarkets Inc., 2021 WL 4551198, at *3 (N.D. Ill. Aug. 11, 2021) (awarding one-third of total settlement amount as attorney's fees); Winking v. Smithfield Fresh Meats Corp., 2022 WL 16706898, at *2 (N.D. Ill. Nov. 4, 2022) (granting one-third of the gross settlement amount to plaintiffs' counsel as reasonable attorneys' fees.

Dated: May 15, 2025                               Respectfully Submitted,

                                            /s/ Harold Lichten
                                            Harold L. Lichten (*pro hac vice*)
                                            Olena Savytska (*pro hac vice*)
                                            Lichten & Liss-Riordan, P.C.
                                            729 Boylston Street, Ste. 2000
                                            Boston, MA 02116
                                            Tel. (617) 994-5800
                                            hlichten@llrlaw.com
                                            osavytska@llrlaw.com

                                            Bradley Manewith, IARDC # 6280535
                                            Lichten & Liss-Riordan, P.C.
                                            5 Revere Drive, Suite 200
                                            Northbrook, IL 60062
                                            Tel. (617) 994-5800
                                            Fax (617) 994-5801
                                            bmanewith@llrlaw.com

                                            *Attorneys for Plaintiffs and the Class*

## <u>CERTIFICATE OF SERVICE</u>

I, Harold Lichten, hereby certify that a true and accurate copy of this document has been served on all Parties on May 15, 2025 via electronic filing.

/s/ Harold Lichten
Harold Lichten