UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ANTHONY JOHN GEORGE, | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:20-cv-06807 |
| | ) | |
| v. | ) | |
| | ) | |
| IIK TRANSPORT, INC., and | ) | |
| IVAN KAZNIYENKO, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

**I.      INTRODUCTION**

Plaintiff hereby respectfully requests that the Court enter an order granting final approval of this class and collective action settlement. This Settlement provides for a non-reversionary total payment of $500,000.00  See Settlement Agreement, Dkt. 203.1, at I(21), V(6). In exchange, Plaintiffs and all Settlement Class Members will provide a release to Defendants that is limited to wage and hour/unpaid overtime claims and other claims which were, or which could have been, asserted in this lawsuit. Id. at IX(1).

On May 16, 2025, the Court granted preliminary approval of this settlement, and notice to Settlement Class Members issued on May 30, 2025. Dkt. 205; Lichten Decl. (Dkt. 208.1) ¶ 18. Plaintiffs' Counsel have not received any objections to the proposed Settlement. Id. at ¶ 22. The fact that the Settlement Class overwhelmingly supports the Settlement strongly favors final approval. See Sanchez v. Roka Akor Chicago LLC, 2017 WL 1425837, at *2 (N.D. Ill. Apr. 20, 2017) ("The absence of any objections to the Settlement by Class Members . . . supports approval of the Settlement."); In re Mexico Money Transfer Litig., 164 F.Supp.2d 1002, 1021

1

(N.D.Ill.2000) aff'd, 267 F.3d 743 (7th Cir.2001) (holding that the fact that more than "99.9% of class members have neither opted out nor filed objections . . . is strong circumstantial evidence in favor of the settlement").

The settlement is entitled to a presumption of fairness because it is clearly the result of arm's length negotiations between experienced counsel, assisted by an experienced and independent mediator – Peter R. Meyers, Esq. In addition, Plaintiffs' Counsel have been litigating this case for over four years and conducted an in-depth factual investigation analyzing hundreds of pages of documents, and prepared a detailed damages model ahead of trial. See Lichten Decl. ¶ 12. Moreover, the case has been aggressively litigated by both sides and has more than 200 docket entries.

Finally, the Settlement merits final approval because it offers the Settlement Class substantial advantages over continued litigation of this case. Specifically, Settlement Class Members will receive certain financial compensation and they will avoid the risks inherent in the continued prosecution of this case, in which Defendants have asserted various defenses to liability. Most crucially, the Settlement is preferable to continued litigation in this case given that significant concerns exist regarding the Defendants' viability, and their ability to withstand a greater settlement or a judgment in this case.[1] Protracted litigation and a higher judgment would likely yield a bankruptcy petition. The average settlement award in this case is estimated at $1,387.00; the maximum settlement share is in excess of $7,000.00. Id. ¶¶ 14-15. For these reasons, detailed further below, the Court should enter an order granting final approval of the Settlement.

---

[1] A supporting affidavit detailing Defendants' financial condition was submitted to the Court for *in camera* review in conjunction with Plaintiff's Motion for Preliminary Approval.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Prokhorov initiated this lawsuit on November 17, 2020, asserting claims for misclassification and unlawful deductions under the Illinois Wage Payment and Collection Act ("IWPCA"). Dkt. 1. The Court in this case certified a class of other similarly situated delivery drivers (Dkt. 81), and found, on summary judgment, that the Plaintiff class are employees of Defendant IIK. Dkt 169. The Court also outlined in its decision several categories of deductions which Plaintiff and the class may be able to recover under the IWPCA. See Id. Trial was set for April 29, 2025 in this case. Dkt. 177.

Ahead of trial, Class Counsel filed motions challenging the sufficiency of the data provided by Defendants; Defendants filed a motion to postpone the trial in light of Mr. Prokhorov's passing, and Class Counsel filed a Motion to substitute Mr. George as a named Plaintiff. See Dkts. 184, 185, 188, and 194. On April 11, after an in-person hearing, the Court allowed the motion to substitute and denied the motion to continue trial. Dkt. 196. In the following weeks, the Parties engaged in informal settlement discussions, and, on April 23, 2025 participated in a mediation before experienced Chicago-area mediator Peter R. Meyers, which has resulted in the settlement currently before the Court. Lichten Decl. ¶ 8.

On May 16, 2025, the Court granted preliminary approval of the settlement. Dkt. 205. On May 30, 2025, Plaintiff's Counsel sent out notice by mail to 226 and e-mail to approximately 91 Settlement Class Members. Lichten Decl. ¶ 18.[2] Of the notices initially mailed out, 24 came back as undeliverable; after WestLaw searches for updated addresses, 17 of these were re-mailed. Id. at ¶ 20. Of the 91 emailed notices, 6 bounced back. Id.. One additional individual, who met the

---

[2] Plaintiff's Counsel also issued notice by publication in three newspapers, as provided in the Settlement Agreement. Id. ¶ 19.

3

criteria for the settlement class, reached out to Plaintiff's Counsel, and was added to the settlement distribution list. Id. at ¶ 21. Plaintiff's Counsel have received no objections to the settlement to date. Id. at ¶ 22. Should the Court grant final approval of the Settlement Agreement, Plaintiffs' Counsel will continue to work in the coming weeks to update Settlement Class Member contact information, distribute checks, and respond to Settlement Class Member inquiries. Id. at ¶ 23.

### III.   ARGUMENT

#### A.   The Settlement Is Fair And Reasonable Under Rule 23(e)

The fairness of the Settlement is analyzed under the standard applicable to class action settlements under Fed. R. Civ. P. 23(e). A court must evaluate a class action settlement to determine whether it is "'fair, reasonable, and adequate.'" Williams v. Rohm & Haas Pension Plan, 658 F.3d 629, 634 (7th Cir. 2011) (quoting Fed. R. Civ. P. 23(e)(2)). As a general matter, "The compromise of complex litigation is encouraged by the courts and favored by public policy." "In the class action context in particular, there is an overriding public interest in favor of settlement." Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee, 616 F.2d 305, 313 (7th Cir. 1980), overruled on other grounds, Felzen v. Andreas, 134 F.3d 873 (7th Cir. 1998). This is because class action settlements "reduce[] the strain such litigation imposes upon already scarce judicial resources." Id.

In evaluating the fairness of a settlement under Rule 23(e), courts in this Circuit examine the following factors:

> (1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed.

Gautreaux v. Pierce, 690 F.2d 616, 631 (7th Cir.1982) (citing Armstrong v. Board of School Directors, 616 F.2d 305, 314 (7th Cir.1980)). Application of these factors to the present case shows that the settlement reached by the Parties meets the requirements of Rule 23(e).

### 1. The Strength of Plaintiffs' Case on the Merits Compared to the Settlement Terms

"The most important factor relevant to the fairness of a class action settlement is the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." Wong v. Accretive Health, Inc., 773 F.3d 859, 863-64 (7th Cir. 2014) (quoting In re Gen. Motors Corp. Engine Interchange Litig., 594 F.2d 1106, 1132 n. 44 (7th Cir.1979)). Here, the Settlement presents a substantial recovery for Settlement Class Members. The Gross Settlement Fund of $500,000.00 represents approximately 50% of the Settlement Class Members' damages in this case, and is a significant recovery in light of the risks of continued litigation, the various defenses available to Defendants, particularly given Defendants' financial condition and Plaintiffs' ability to collect on a greater judgment. See Lichten Decl. ¶¶ 10-11. Plaintiff's Counsel estimate that the average settlement award will be approximately $1,387.00, and the highest payout will be in excess of $7,000.00. Id. ¶ 15. Based on Plaintiff's Counsel's comprehensive review of Defendants' financial documents, Plaintiffs' Counsel believe that this settlement is the best outcome under the circumstances and the only viable way to prevent a bankruptcy petition.

Plaintiff and the Settlement Class Members faced a number of obstacles to recovery, were this case to continue through litigation. For one, Specifically, Plaintiffs' Counsel faced the risk that the Court would find, at trial, that the deductions taken by IIK do not violate the IWPCA, either because they are for the class members' benefit, or because they are authorized by the class members' contracts. Lichten Decl. ¶ 10. More importantly, in preparation for the mediation, Defendants provided Class Counsel with detailed information regarding their financial condition.

Class Counsel analyzed the financial information to ascertain IIK's financial condition and ability to satisfy a judgment. Id. ¶ 11. Based on this financial information, it is unlikely that IIK could satisfy a judgment entered in this case, and the class faced a very real risk of being unable to recover their damages even if they were successful on the merits. Id. Thus, despite litigating this case for nearly five years, Plaintiff's Counsel have determined that, based on Defendants' financial situation, the best interests of the class are served by obtaining compensation now in the form of the settlement before the Court, rather than face the risk of being unable to recover anything at this action's conclusion. Id. In sum, the settlement properly accounts for the various legal issues and risks present in Plaintiff's and class members' claims.

### 2. The Complexity, Length and Expense of Further Litigation

The complexity, expense and likely duration of this litigation also support approval of the Settlement. Prior to engaging in mediation, the Parties engaged in extensive briefing on discovery, class certification, and summary judgment, have conducted depositions of Plaintiff and Defendants' witnesses, exchanged hundreds of pages of documents in discovery, and prepared detailed damages models ahead of trial. Were the case to proceed, the Parties would need to participate in a lengthy – and costly – bench trial, as well as potential subsequent appellate proceedings. In sum, the complexity, expense and likely duration of this litigation weighs in favor of final approval. See Isby, 75 F.3d at 1199 (settlement approved where "continuation of the litigation 'would require the resolutions of many difficult and complex issues,' would 'entail considerable additional expense,' and would 'likely involve weeks, perhaps months, of trial time.'"); Am. Int'l Group, Inc. v. ACE INA Holdings, Inc., 2011 WL 3290302, at *7 (N.D. Ill. July 26, 2011) ("Continuing to litigate this case will require vast expense and a great deal of time, on top of that already expended."). This factor strongly supports final approval of the Settlement.

### 3. The Reaction of the Class to the Settlement

The reaction of the Settlement Class further supports final approval of the Settlement. Plaintiffs' Counsel have received no objections to the settlement. Lichten Decl. ¶ 22. See In re Mexico Money Transfer, 164 F.Supp.2d at 1021 (the fact that more than "99.9% of class members have neither opted out nor filed objections . . . is strong circumstantial evidence in favor of the settlement"). The overwhelmingly positive response to the settlement counsels in favor of final approval.

### 4. The Opinion of Competent Counsel

In evaluating the fairness of a class action settlement, courts are "entitled to rely heavily on the opinion of competent counsel …." Gautreaux, 690 F.2d at 634 (quoting Armstrong, 616 F.2d at 325). The opinions of counsel are entitled to particular weight when the proposed settlement is the product of arm's-length negotiations with an experienced mediator. See Wong, 773 F.3d at 864. In this case, Plaintiff's Counsel have carefully weighed the risks attendant to proceeding with litigation, including the fact that Defendants could not withstand a judgment or pay a settlement for a greater amount. Lichten Decl. ¶ 11. They have pored over hundreds of pages of documents produced by Defendants; have prepared a detailed damages model, and have participated in a full day mediation session with experienced Chicago mediator Peter R. Meyers prior to reaching Settlement. Id. ¶¶ 8, 12.

### 5. The Stage of the Proceedings and the Amount of the Discovery Completed

This final consideration is "important because it indicates how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims." Armstrong, 616 F.2d at 325. In the instant case, prior to engaging in mediation, Plaintiff's Counsel have reviewed extensive written discovery, have conducted depositions of Defendants and their representatives, and have produced

7

discovery for Plaintiff. The Court had already issued rulings on class certification and partial summary judgment, and the next step for this case was trial. In sum, Plaintiff's Counsel were fully aware of the risks and benefits of this case prior to reaching the Settlement. There are more than 200 docket entries in this case.

>   B.   **The Proposed Service Awards are Reasonable**

The size of a service award is determined by examining "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998) (citing Spicer v. Chicago Bd. Options Exchange, Inc., 844 F. Supp. 1226, 1267 (N.D. Ill.1993)).

Service awards are particularly important in wage and hour cases, where plaintiffs face risk of retaliation from potential employers. Sand v. Greenberg, 2011 WL 7842602, at *3 (S.D.N.Y. Oct. 6, 2011) (approving service awards in FLSA case as reasonable and finding that Plaintiffs "took risks by putting their names on this lawsuit," including the risk of "blacklisting and other more subtle forms of retaliation"); Craig v. Rite Aid Corp., 2013 WL 84928, at *13 (M.D. Pa. Jan. 7, 2013), appeal dismissed (3d Cir. Feb. 20, 2013) ("[N]amed Plaintiffs in FLSA or state wage and hour claims are often retaliated against in the industry as a result of their obvious participation in such litigation.").

Here, Plaintiff's Counsel request a service award in the amount of $10,000.00 to Frankie Ferreira, a class member who stepped forward, in the weeks leading up to trial, and following Mr. Prokhorov's passing, to provide his extensive pay records and crucial information regarding Defendants' recordkeeping and pay practices. See Lichten Decl. ¶¶ 24-25, 27-28. Mr. Ferreira was one of just a few people willing to provide testimony at trial, and would have served as the main witness for the Plaintiffs had the case proceeded to trial. Id. ¶¶ 27, 29. Plaintiff's Counsel also

request a payment of $5,000.00 to Plaintiff Anthony John George, who agreed to lend his name to the case following Mr. Prokhorov's passing. As this Court is aware, the threat of retaliation has discouraged potential Plaintiffs and many of the class members from pursuing claims in this case; with the sudden passing of Mr. Prokhorov, Plaintiff's Counsel were hard pressed to find individuals willing to step forward and continue pursuing the IWPCA claims on behalf of the class. Id. ¶¶ 25-26.

The service awards requested appropriately compensate Mr. Ferreira and Mr. George for their willingness to step forward to represent the class, offering to provide testimony at trial, and ultimately bringing this case to settlement. Id. ¶¶ 24-30. Courts have widely recognized that incentive payments serve an important function in promoting enforcement of state and federal law by private individuals, while also encouraging class action settlements.[3] A 2006 study found that while the average incentive payment approved in class action settlements was around $15,000, awards in wage cases were generally higher.[4] As one court observed, "[incentive] awards are particularly appropriate in the employment context. In employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer

---

[3] See Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998) (holding "named plaintiff is an essential ingredient of any class action," affirming incentive award of $25,000 to the named plaintiff); In re Relafen Antitrust Litig., 231 F.R.D. 52, 82 (D. Mass. 2005); Douglas v. W. Union Co., 328 F.R.D. 204, 218-19 (N.D. Ill. 2018) (granting incentive award to named plaintiff); In re Compact Disc Min. Advertised Price Antitrust Litig., 292 F. Supp. 2d 184, 189 (D. Maine 2003); Sheppard v. Consol. Edison Co. of N.Y., Inc., 2002 WL 2003206, at *5-6 (E.D.N.Y. Aug. 1, 2002) (collecting cases approving incentive payments).

[4] Scovil v. FedEx Ground Package Sys., Inc., 2014 WL 1057079, at *6 (D. Me. Mar. 14, 2014) (citing Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study,* 53 UCLA L. Rev. 1303, 1308 (2006)). The court in Scovil found that recent awards in employment cases reached $30,000 and higher. Id. (citing Cook, 142 F.3d at 1016 (approving $25,000 incentive award for one named plaintiff)); see also Brandon v. 3PD, Inc., No. 13-CV-03745, slip op (N.D. Ill. Jan. 26, 2016) (approving service awards of $20,000 to two plaintiffs, and $10,000 to one plaintiff); In re Broiler Chicken Antitrust Litig., 2021 WL 5578878, at *4-5 (N.D. Ill. Nov. 30, 2021) (granting $15,000 incentive award to named plaintiffs); Briggs v. PNC Fin. Servs. Grp., Inc., 2016 WL 7018566, at *3 (N.D. Ill. Nov. 29, 2016) (awarding $12,500 to named plaintiffs); Zolkos v. Scriptfleet, Inc., 2015 WL 4275540, at *3 (N.D. Ill. July 13, 2015) (awarding $148,000 in incentive payments ranging from $3,500 to $10,000 per plaintiff).

or co-workers." Frank v. Eastman Kodak Co., 228 F.R.D. 174, 187 (W.D.N.Y. 2005). Given Mr. Ferreira's and Mr. George's significant contribution to this case at a critical juncture, and the fact that they faced potential retaliation from IIK and/or future employers in the trucking industry, the proposed service awards are fair and reasonable. For these reasons, the Court should approve an award of $10,000.00 to Frankie Ferreira and $5,000.00 to Anthony John George for their service to the Settlement Class.

## IV.     CONCLUSION

Based upon the foregoing reasons, Plaintiff respectfully requests that the Court grant this Unopposed Motion for Final Approval of the Settlement Agreement.

Dated: September 12, 2025                                          Respectfully Submitted,

/s/ Olena Savytska
Harold L. Lichten (*pro hac vice*)
Olena Savytska (*pro hac vice*)
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Ste. 2000
Boston, MA 02116
Tel. (617) 994-5800
hlichten@llrlaw.com
osavytska@llrlaw.com

Bradley Manewith, IARDC # 6280535
Lichten & Liss-Riordan, P.C.
5 Revere Drive, Suite 200
Northbrook, IL 60062
Tel. (617) 994-5800
Fax (617) 994-5801
bmanewith@llrlaw.com

*Attorneys for Plaintiff and the Class*

## CERTIFICATE OF SERVICE

I, Olena Savytska, hereby certify that on this 12th day of September, 2025 I filed the foregoing document with this Court using the CM/ECF. This system sends notifications of such filing and service to all counsel of record.

/s/Olena Savytska
Olena Savytska